STATE of Missouri, Respondent,

v.

Betty COLEMAN, Appellant.

No. WD 34397.

Missouri Court of Appeals,
Western District.

Aug. 23, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 15, 1983.

Application to Transfer Denied
Dec. 20, 1983.

Betty Coleman, pro se.

Karl L. Madden, Jr., Moberly, for appellant.

John Ashcroft, Atty. Gen., William K. Haas, Neil MacFarlane, Asst. Attys. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C.J., Presiding, and TURNAGE, and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for the offense of capital murder, in violation of § 565.001, RSMo 1978. The jury assessed punishment at life imprisonment without eligibility for parole until a minimum of 50 years is served. Judgment was entered in accord with the jury's verdict and the judgment is affirmed.

Jurisdiction is vested in this court by an amendment to the Missouri Constitution, Article V, § 3, effective December 1982. *State v. Martin,* 644 S.W.2d 359 (Mo.banc 1983).

Prior to setting forth the pertinent facts and considering the alleged errors, it is noted that the file on appeal contains no less than three appellant briefs. This case and the court file attendant thereto was ordered transferred to this court by the Missouri Supreme Court for disposition. Review of the file revealed an original appellant brief filed pro se dated September 13, 1982 with the Missouri Supreme Court. Under date of January 12, 1983, appellant filed with our court a document which she captioned, "Amendment To Pro Se, Brief and Argument." On January 24, 1983, counsel for appellant filed with our court an appellant's brief. On the same date (January 24, 1983) respondent filed with this court its brief.

At the time of oral argument, appellant (by counsel) moved this court by dual motion to expand the record on appeal and to correct the record on appeal. Following argument of these motions, both were denied. Appellant (by counsel) moved this court to include appellant's pro se brief and her "amendment" to her pro se brief. This motion was granted. The record and the court file failed to reveal whether respondent ever was apprised of the pro se brief

and the "amendment", thus respondent was granted 15 days to file a responsive brief to the pro se brief and the "amendment" by order of this court dated June 14, 1983. Respondent filed its additional brief.

Review of all the briefs on file by appellant reveals certain duplication. For purposes of disposition of this appeal, the points presented by the three appellant briefs are addressed collectively without specific reference to any particular brief.

By elimination of certain duplication, it is determined that appellant presents seven points of error. In summary, appellant charges that the trial court erred: (1) in refusing to sustain appellant's motion to dismiss at the close of the state's case *and sua sponte* at the close of all the evidence, because the evidence was insufficient; (2) in failing to instruct the jury on murder, first degree; (3) in the submission of an instruction which failed to ascribe appellant's mental intent; and (4) by not dismissing the case at the close of the state's case, because the state failed to prove the corpus delicti. As her point (5), appellant charges that the trial court committed plain error when it failed to set aside the jury verdict because there was prejudicial deviation between the information and proof at trial. Appellant further charges (6) that the trial court committed plain error in its failure to properly follow MAI–CR2d 1.08(b). As her final point (7), appellant charges that the trial court committed plain error by not sustaining her motion for new trial because the state had suppressed certain evidence.

Appellant's challenge to the sufficiency of the evidence necessitates a detailed statement of the pertinent facts. The state produced thirty-one witnesses, but it is from the testimony of state's witness John Morgan that the basic facts surrounding the commission of this offense were related to the jury. It is from Morgan's testimony that the following facts are drawn, but where applicable, pertinent facts provided by other witnesses are interrelated and their source identified.

The record reveals that John Morgan and one Doyle Williams had been involved in

numerous criminal acts in various areas of Missouri. Their criminal conduct included at least one death in addition to the victim herein, Kerry Brummett. Brummett knew of the criminal acts of Morgan and Williams and Brummett was to be a witness against Morgan. Appellant was the girlfriend of Williams. Morgan was granted immunity from all criminal charges in exchange for his testimony against appellant.

Morgan testified that he was told by Williams that appellant had agreed to make a date with Brummett the evening of October 9, 1980. Brummett was employed at a local pizza establishment. Another employee at the restaurant testified seeing appellant in the restaurant the evening of October 9, 1980, just prior to the 12:00 midnight closing time. Other witnesses testified that they saw Brummett and appellant during the early morning hours of October 10, 1980 in a restaurant in Jefferson City, Missouri.

Morgan testified that he, Williams, and appellant planned to kill Brummett. The plan provided that appellant would make a date with Brummett, meet him, and transport him to a predetermined location. Morgan and Williams would then kill Brummett.

Morgan testified that he met appellant and Williams at a local steakhouse in Jefferson City a little after 9:00 p.m. on October 9, 1980. The trio drove to appellant's trailer home in Brazito, Missouri where Williams and appellant changed clothes. During the trip, Williams asked appellant how the date with Brummett had gone, and she advised Williams and Morgan that she was to meet Brummett at 12:00 or 12:30. As the conversation continued, Williams told appellant that after she picked up Brummett, she was to bring him to her trailer and that is where he was to be killed. Appellant told Williams that she did not want Brummett at the trailer because she lived with another girl and she did not want the other girl to see anything like that happen. The discussion then turned to another possible location, and it was decided that appellant would deliver Brummett to a rural road in Callaway County.

After Williams and appellant changed clothes at the trailer, Williams asked appellant if there were any "concrete blocks or anything to weigh him [Brummett] down with." Appellant told Williams and Morgan that they would look around the trailer as she did not know. Some nylon rope was found. The three left the trailer. As the trio returned to Jefferson City, further discussion was held, during which Williams and Morgan told appellant that one of them would be on each side of the road. Morgan and Williams were to go to the road and wait, and appellant was to drive Brummett to the location.

As noted, other witnesses observed appellant with Brummett on the early morning of October 10, 1980 [about 1:00 a.m.] in a Jefferson City restaurant.

Appellant drove Brummett to the prearranged location, stopped the vehicle, and got out. As she got out of the vehicle, Morgan pulled Brummett from the vehicle. Appellant got back into the vehicle and started it, and then walked a short distance to Morgan's automobile, got in it, and drove off.

At this point, Morgan had Brummett on the ground. Williams came around the vehicle which appellant had driven to the scene and tried to place handcuffs on Brummett. Brummett was drawn up on his side and to get to Brummett's hands, Williams beat Brummett on the head with a pistol, kicked, and stomped on him. Morgan also beat on Brummett. Brummett was handcuffed. (Through another witness, the evidence established that Williams had borrowed the handcuffs.) Brummett's employee nametag was later retrieved from the ground at the location where appellant had driven him by law enforcement officers. Morgan and Williams placed Brummett in the trunk of the vehicle. The road upon which these events took place led to the Missouri river and the vehicle was driven to the river. When they arrived at the river, they observed some people camping near the river. They turned the vehicle around and took another road to the river. Morgan and Williams planned to dump Brummett in

the river. Williams took Brummett from the trunk while Morgan retrieved the rope and an auto jack with which to weigh down Brummett's body. Williams and Brummett were standing on the river levee and Williams hit Brummett with his fist. This blow caused Brummett to go over "the first bank" of the levee. Brummett started to run and ran into the river. Williams was running right behind Brummett. Before Brummett went under the water, Williams hollered at Morgan to shoot Brummett. Morgan fired a shot over Brummett's head. Morgan and Williams departed for Tebbetts, Missouri.

The clothing worn by Morgan and Williams had Brummett's blood on them, and there was blood in the vehicle used to transport Brummett. Morgan and Williams changed clothes and placed them in a "dog food sack". They then drove the vehicle to Mokane, Missouri and washed the inside and trunk of the vehicle at a self-service car wash. They then returned to Tebbetts, Missouri to the trailer residence of one Roger Hazelett. The time was approximately 4:00 a.m. on October 10, 1980. Morgan slept until about 4:00 p.m. that afternoon. When he awoke, he saw appellant at the trailer. Morgan and Williams then burned their clothing which they had previously placed in the "dog food sack."

Through appellant's roommate's evidence, it was determined that the vehicle used to transport Brummett was owned by the roommate. Earlier in the day of October 9, 1980, appellant had arranged and traded her vehicle for the vehicle of her roommate.

Brummett's body was retrieved from the Missouri river. An autopsy was performed, which revealed laceration and abrasion type wounds to the head and which affixed the cause of death as drowning.

In addition to her own testimony, appellant presented six witnesses in her defense. These witnesses in summary testified as follows.

The first witness, a local deputy sheriff, was called to challenge the accuracy of his report regarding having seen Brummett at 3:00 a.m. on October 10, 1980. The second witness was asked if he knew [remembered] being with the first witness in the early morning of October 10, 1980, and this witness answered, "No, I don't." The third defense witness was asked if she had seen either Brummett or appellant in the local restaurant in the early morning hours of October 10, 1980. She could not recall. The next witness was the former wife of Morgan. She was called to discredit Morgan's testimony regarding whether Morgan had struck her during a domestic quarrel, which Morgan had denied. The defense then called a physician/psychiatrist to give his expert opinion on the physical effects of the drug Preludin. Morgan had testified that he had taken Preludin regularly, both orally and "by shooting it."[1] On some days, he said, he would "shoot" as many as 40–50 pills. He denied that the use of this drug affected his memory.

The expert called for the defense stated that the drug is a stimulant which makes people nervous and excited. He stated that it causes changes in perception. He was never asked about or volunteered any confirmation as to memory loss. He did conclude that in some cases, prolonged use could lead to insanity.

The defense then called John Morgan as a witness. Morgan was examined as to his use of Preludin, and asked to explain how the pills were prepared for "shooting up." He admitted to taking 9 pills about 10:00 p.m. the night of October 9, 1980, but stated these 9 pills did not make him "real high."

The defense expert was recalled, and after being given a hypothetical question about Preludin, stated that prolonged use would produce a very good chance of organic brain syndrome, and in addition to other effects, could possibly cause memory loss, "that is, holes in memory."

1. This term denotes the distillation of Preludin by heating it and then injecting the residue into the veins by using a syringe.

Appellant then testified in her own behalf. In summary, she admitted to trading vehicles with her roommate, but explained that it was so she could ride around with Williams, and the two would not be identified (from her own vehicle) by another girlfriend of Williams. She stated that she and Williams were at her trailer changing clothes in preparation for a trip to Tebbetts, Missouri when Morgan arrived at her trailer. She claimed that she had no conversation with Morgan. She claimed she saw Morgan later at a bar, and that she was there with Williams, and Morgan was with some lady she did not know. She stated Morgan told them he was going to St. Louis to sell some stolen items. She stated she and Williams left, stopped at a cafe, got cokes, and left for Tebbetts, Missouri. Appellant testified she did not know Brummett. She further testified she was never in the pizza restaurant, nor the local restaurant later with Brummett. She denied any involvement with the murder.

The state produced a rebuttal witness who testified that appellant and Williams were at his house around 8:30 or 9:00 p.m. the evening of October 9, 1980. This witness originally intended to sell a tract of land to appellant, but decided against it. Appellant told this witness she was late for an appointment in Jefferson City at 9:00 p.m.

The evidence closed. The jury returned its verdict of guilty. The punishment phase of the bifurcated capital offense proceedings was conducted, and at the close thereof, the jury imposed upon appellant a life sentence without eligibility of parole until a minimum of 50 years had been served. This appeal followed the timely filing of post-trial motions.

Under her point (1), appellant charges that the trial court erred in refusing to sustain her motion for acquittal at the close of the state's case, and in failing to grant her an acquittal *sua sponte* at the close of all the evidence.

Appellant's argument is most strongly predicated upon her suggestion and conclusion that the testimony of John Morgan was so incredible and unworthy of belief that his testimony should not have been presented to the jury. In a detailed argument, appellant references inconsistencies in Morgan's testimony and emphasizes his habitual use of drugs. Appellant then attacks the credibility of other state witnesses, pointing out alleged inconsistencies in their testimony.

This court has reviewed the testimony of all the witnesses in this matter. In turn, this court concludes that the testimony of the state's witnesses was sufficient to have submitted the issues to the jury. Appellant vigorously attacks the credibility of the state's witnesses, but it has long been the rule that appellate courts do not judge the credibility of witnesses. This rule was clearly set forth in *State v. Wright,* 476 S.W.2d 581, 584 (Mo.1972), wherein our state Supreme Court held: "[t]he credibility of the witness and the weight and value to be given his testimony are matters within the province of the jury and are not for review on appeal." See also *City of Kansas City v. Oxley,* 579 S.W.2d 113 (Mo.banc 1979); *State v. Garner,* 481 S.W.2d 239 (Mo. 1972); *State v. Frank,* 639 S.W.2d 209 (Mo. App.1982); and *State v. Denmon,* 570 S.W.2d 326 (Mo.App.1978).

Aside from the fact that appellate courts view the evidence in the light "most favorable to the state," *State v. Greathouse,* 627 S.W.2d 592, 596 (Mo.1982) and *State v. Letterman,* 603 S.W.2d 951, 952 (Mo.App. 1980), it can be stated unequivocally that herein the evidence, as submitted by the state, was sufficient to withstand appellant's motion for acquittal at the close of the state's case. In addition, the record reveals nothing at the close of the evidence which rendered the evidence insufficient to warrant or require the trial court to acquit appellant *sua sponte.*

The trial court did not err in its refusal to grant appellant's motion for acquittal or in not having acquitted appellant sua sponte. There is no merit to appellant's point (1) and it is ruled against her.

Under her point (2), appellant charges that the trial court erred in failing to instruct the jury on murder first degree.

■ Appellant argues that the jury should have been instructed on murder first degree in addition to capital murder, murder second degree, and manslaughter. Her argument is premised upon her claim that the evidence presented to the jury could have found that Brummett was kidnapped for the purpose of interfering with a government function (i.e., witness in a criminal prosecution), "inflicting physical injury or terrorizing the victim or another and or facilitating the commission of another felony, to wit: murder."

Appellant acknowledges that the trial court instructed the jury that it could find her not guilty of any offense, or the jury could find her guilty of capital murder, murder second degree, or manslaughter, MAI–CR2d 2.14. In addition, the trial court submitted Instruction No. 8, MAI–CR2d 15.02, as modified by Missouri Supreme Court order on April 14, 1981, and MAI–CR2d 2.12, capital murder; Instruction No. 9, MAI–CR2d 15.14 as modified, murder second degree; and Instruction No. 10, MAI–CR2d 15.18 as modified, manslaughter.

Appellant contends, however, the trial court also should have instructed the jury on murder first degree. Her contention is based upon § 565.003, RSMo 1978, which provides in part, "if the [unlawful] killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, *or kidnapping*" (emphasis added), then the accused is guilty of murder first degree. Appellant suggests that the jury could have inferred from the evidence that Brummett's death occurred during the commission of the crime of kidnapping (§ 565.110, RSMo 1978). Appellant *suggests that from the evidence, the jury could* have inferred that Brummett was kidnapped to prevent him from testifying against Morgan and Williams and/or he had been kidnapped for the purpose of inflicting physical injury or terrorizing him or another [§ 565.110.1(5) ]. Appellant then goes into great detail as to how Brummett was seized by Morgan and Williams and was confined and detained against his will or without his consent; she posits from this evidence that she was entitled to an instruction on murder first degree as prescribed by § 565.003 and MAI–CR2d 16.08/15.08. She cites *State v. Gotthardt,* 540 S.W.2d 62, 66 (Mo. banc 1976), which rules that the trial court is obligated to instruct the jury upon the law of the case, whether requested or not. Appellant further supports this contention by citing *State v. Fuhr,* 626 S.W.2d 379 (Mo.1982), which reversed a capital murder conviction for failure to instruct on murder first degree wherein the accused had murdered the victim and then robbed her. She also cites *State v. Gardner,* 618 S.W.2d 40 (Mo.1981), which reversed a capital murder conviction for failure to instruct on murder first degree where the murder occurred during the course of a rape.

Appellant acknowledges the rulings in *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982) and *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), which hold that murder first degree is not a lesser included offense of capital murder. As regards these two decisions, appellant argues that they are incorrect and should be reconsidered, and alternatively, that both decisions ignore other authority which mandates the giving of any instruction supported by the evidence based in part by MAI–CR2d 15.00.-3(d).

In reference to MAI–CR2d 15.00.3(d), appellant cites *State v. Daugherty,* 631 S.W.2d 637 (Mo.1982), a capital murder case involving the death of a priest wherein the jury *was* instructed on murder first degree. The court ruled that murder first degree was not necessarily a lesser included offense, but evidence of robbery was sufficient to submit the murder first degree instruction. *State v. Emerson,* 623 S.W.2d 252 (Mo.1981).

Appellant contends that the Missouri Supreme Court apparently did not consider the MAI–CR2d 15.00 series of *Fuhr* and *Daugherty, supra,* in rendering its decisions in *Baker* and *Blair.* Appellant further suggests that *Daugherty* appears to have been

overruled without our state Supreme Court having ever really considered it.

More recently, our state supreme court has addressed the precise issue of whether murder first degree is a lesser included offense of capital murder. In *State v. Williams*, 652 S.W.2d 102 (Mo.banc 1983), and *State v. Goddard*, 649 S.W.2d 882, 887 (Mo. banc 1983), our state supreme court reaffirmed the rule in *Baker, supra*. In addition, in *State v. Holland*, 653 S.W.2d 670 (Mo. banc 1983), our state supreme court cites to *State v. Betts*, 646 S.W.2d 94 (Mo. banc 1983), which reaffirmed the rule in *Baker* and went on to hold: "Thus, *Baker*, today, remains viable."

Appellant urges this court to reexamine § 556.046.1(1), RSMo 1978, which defines a lesser and included offense. She suggests that in *Baker*, our state supreme court cited *State v. Smith*, 592 S.W.2d 165 (Mo. banc 1979), which ruled that trespassing was not a lesser included offense of burglary second degree, citing as authority *State v. Friedman*, 398 S.W.2d 37, 40 (Mo.App.1965).

Appellant continues her argument by urging that homicide offenses should be defined by degree, like other offenses, as opposed to being defined by the element of intent involved. While this court finds such proposal very interesting, it is not in a position to render any opinion on such an issue.

It is beyond the authority of this court to again reexamine § 556.046.1(1), and it is further submitted that the recent decisions in *Goddard* and *Holland* have done just that. It is the rulings in those decisions, plus *Baker* and *Blair* to which this court is bound. Thus, it must be concluded that appellant's point (2) is meritless because of the rule in *Baker, Blair, Williams, Goddard,* and *Holland, supra*.

There are yet other reasons in the instant case why appellant's point (2) is meritless and the application of the rules announced in *Fuhr* and *Gardner* are not applicable.

In the first instance, the record reveals that during the instruction conference, the trial court advised appellant of the instructions it intended to submit. These instructions did not include murder first degree. Appellant's counsel was asked:

"Are there any other instructions you wish to submit?

No sir. I do not.

(The Court): There is not a submission with regard to first degree or murder in the first degree which relates I think to the five offenses of kidnapping, arson, burglary, rape, robbery—Is that four or five? You do not wish a submission on that?

No sir."

It is clear from the foregoing that appellant expressly declined the court's offer of the murder first degree instruction. Such refusal is tantamount to a waiver. Such a response has been held to fall "within the law of self-invited error." *State v. Young*, 610 S.W.2d 8, 13 (Mo.App.1980); *State v. Howard*, 615 S.W.2d 498, 500 (Mo.App. 1981); *State v. McIlvoy*, 629 S.W.2d 333 (Mo. banc 1982) and *State v. Euell*, 583 S.W.2d 173 (Mo. banc 1979).

As appellant correctly points out, *Fuhr, Gardner,* and *Daugherty* provide that an instruction on murder first degree may be required in a capital murder case, because of the directives of the Notes on Use to the MAI–CR2d 15.00 series, and specifically to MAI–CR2d 15.00(3), which directs the giving of the murder first degree instruction if justified by the evidence. Admittedly, this court does not know, in light of the rulings in *Baker* and *Blair, supra,* if *Fuhr, Gardner,* and *Daugherty* retain any validity upon that issue, but even if those cases remain valid and controlling, they find no applicability to the instant case. Simply, the reason is that in *Blair*, the court was faced with the contention that there was evidence of the underlying felony of kidnapping. In *Blair,* as in the instant case, the victim was "kidnapped" for a short period of time and removed a short distance *for the purpose of the commission of the murder*. The factual circumstances in *Blair* are comparable to the instant case. In *Blair,* the claim that an instruction on murder first degree should have been given because there was evidence

of a "kidnapping" was rejected. See also *State v. Woods,* 639 S.W.2d 818 (Mo.1982).

In the instant case, although appellant argues to the contrary, there is no evidence that Brummett was kidnapped by appellant, Morgan, and Williams within the meaning of the statute, § 565.110, *supra.* The evidence revealed that appellant, Morgan, and Williams planned the "luring" of Brummett to a predetermined location for the express purpose of murdering him. As noted from the above facts, appellant successfully made a date with Brummett and transported him to the predetermined location. Upon the arrival of appellant and Brummett, the remainder of the murder plan was completed when Morgan and Williams struck, handcuffed, transported, and then caused Brummett to drown in the Missouri River. There is not one shred of credible evidence that appellant, Morgan, and Williams ever intended to, or in fact did, "kidnap" Brummett, within the meaning of the statute. The transportation of Brummett without his consent was merely the physical means to complete the murder. There is no evidence that Brummett was confined without his consent for a substantial period (§ 565.110.1) for the purpose of "[i]nterfering with the performance of any governmental or political function," [§ 565.-110.1(3) ], or for the purpose of "[i]nflicting physical injury on or terrorizing the victim or another," [§ 565.110.1(5) ]. The evidence is clear that appellant, Morgan, and Williams intended the murder of Brummett, planned the details of the murder, and then acting upon that intent and plan, caused the death of Brummett.

While appellant draws attention to and presents a strong argument that MAI–CR2d, Notes on Use, should control, this court is bound to follow the most recent decisions of our state supreme court and the statutory authority on the issue. The re-maining confusion, when the statutes and case decisions are matched against the MAI–CR2d, Notes on Use, must be left for correction to some ultimate decision by our state supreme court.

In summary, appellant's point (2) is found to be meritless, because of the rulings in *Baker* and *Blair,* the amendment to § 565.-006,[2] the invited error by appellant upon her express declination of an instruction on murder first degree (which amounted to a waiver), and the total lack of any evidence to support the charge of kidnapping within the meaning of § 565.110. The trial court did not err by not instructing the jury upon the charge of murder first degree. Appellant's point (2) is ruled against her.

Under point (3), appellant charges the trial court with additional instruction error. The alleged error is that Instruction No. 8 (set forth below) failed to instruct the jury on the whole of the law, because the instruction improperly ascribed to appellant the mental state of the active participants, Morgan and Williams, instead of referring to appellant's own mental state. The record reflects that this alleged error was not preserved for review because of appellant's failure to enter a specific objection to the instruction at trial, or in the motion for new trial. *State v. Martin,* 620 S.W.2d 54 (Mo. App.1981); *State v. Shives,* 601 S.W.2d 22 (Mo.App.1980); and Rule 28.03. Our review, ex gratia, is for plain error.

The challenged instruction reads as follows:

### "INSTRUCTION NO. 8

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 10, 1980, in the County of Callaway, State of Missouri, Doyle Williams and John Morgan caused the death of Kerry

---

2. It is noted briefly that § 565.006, RSMo 1978 (effective May, 1977) stated that in capital murder cases the jury should determine "whether the defendant is guilty of capital murder, murder in the first degree, murder in the second degree, manslaughter, or not guilty of any offense."

This statute was amended (effective 1979) to read, "the jury shall retire to consider a verdict of guilty or not guilty without any consideration of punishment." This amendment makes it clear that murder first degree is not a lesser and included offense of capital murder.

Brummett by beating and drowning him, and

Second, that Doyle Williams and John Morgan intended to take the life of Kerry Brummett, and

Third, that Doyle Williams and John Morgan knew that they were practically certain to cause the death of Kerry Brummett, and

Fourth, that Doyle Williams and John Morgan considered taking the life of Kerry Brummett fully before doing so,

then you are instructed that the offense of capital murder was committed, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that before the commission of such offense, and with the purpose of furthering its commission, that defendant aided Doyle Williams and John Morgan in committing that offense,

then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.

MAI CR2d 15.02

Supreme Court order 4/14/81

MAI CR2d 2.12"

■ Appellant's attack on the foregoing instruction is multipronged. She first insists that the submitted instruction allows the jury to find her guilty if she "*furthered the commission*" of any offense. Appellant then points out that statute § 562.041.1(2), RSMo 1978 requires that she "*promote the commission*" of an offense. She cites *Arthur v. Royse*, 574 S.W.2d 22, 24 (Mo.App. 1978) for the rule that an instruction must properly follow the statute. Appellant further insists that the point to be made is not the modification of the instruction itself (i.e., furthered versus promote), but that as drafted and submitted, the instruction is a misstatement of the law.

Appellant contends since the word furthered was not defined for the jury, it is safe to assume the jury applied to the word

its most common meaning. Appellant makes no suggestion as to what "its most common meaning" is, but merely asserts "assuming that the jury would decide that both words were synonyms is, however mere speculation." Appellant asserts that the present instruction does not employ "terms which have been determined as proper substitutes by our courts." *State v. Newlon*, 627 S.W.2d 606, 614 (Mo. banc 1982).

■ Appellant further contends that the instruction, as drafted and submitted, requires the jury to find that other persons committed the crime of capital murder, and then "that if appellant, either before or during the commission of an offense, with the purpose of furthering the offense, aided or agreed to aid, then the appellant was to be found guilty." It is appellant's contention that this is a major departure from the criminal law as declared in *Newlon, supra*. Appellant correctly points out that by enactment of the new Missouri Criminal Code, the prior distinction between principals and accessories was eliminated, *State v. Lute*, 608 S.W.2d 381, 384 (Mo. banc 1980), however, she further contends the offense of capital murder still requires the jury to find an independent act of deliberation on the part of the aider, citing *Newlon, supra; State v. Turner*, 623 S.W.2d 4, 8 (Mo. banc 1981) and *State v. Grebe*, 461 S.W.2d 265 (Mo.banc 1970).

Appellant submits a historically accurate account of the submitted and withdrawn forms of instructions. She then directs attention to MAI–CR2d 2.12, Notes on Use (Note 7), wherein it states that if the element of deliberation is not ascribed to the defendant, but ascribed solely to another person or persons, the instruction should be modified by changing the paragraph following "then you are instructed that the offense of _____ has occurred ..." to read "that with the purpose of promoting or furthering the death of _____, the defendant aided or encouraged _____ in causing the death of _____ and reflected upon this matter coolly and fully." It is

noted and appellant admits that the Committee's comments, citing *State v. White,* 622 S.W.2d 939 (Mo. banc 1981), indicate that the failure to make this or a similar type of modification is not necessarily reversible error. Appellant urges that *White* is not applicable to the instant case, because the jury in *White* was instructed "under the 'old form' MAI–CR2d 2.10," which provided guidance for the jury as to the criminal responsibility of a party. Appellant maintains that the instruction in the instant case lacked guidance for the jury, and therefore required the jury to find, once facts of capital murder were proven, that appellant had the same intent as the active participants. She further contends that in the instant case, unlike *White,* the jury was required to find appellant guilty of the same offenses as the active participants, Morgan and Williams. She urges that, unlike *White,* the jury herein could not have found that she possessed both the "intent to aid" and the "same intent as the active participants."

Appellant then directs this court's attention to § 562.051, RSMo 1978, and MAI–CR2d 2.12, Notes on Use (effective January 1, 1983), pointing out that § 562.051 provides that a defendant is guilty of that degree of the offense compatible with his own mental state. Appellant then directs this court to MAI–CR2d 2.12, Note 7, which declares:

> "One cannot have the purpose to promote murder by aiding another person unless one knows the other person intends to kill ... It is possible for an accessory to have the purpose to promote a murder by aiding another person without necessarily having 'deliberated.' To make it clear that to be guilty of capital murder the defendant must have deliberated, the verdict director must require finding of that element."

In summary, appellant contends the instruction was erroneously given, because it does not properly follow the underlying applicable statute, requiring the jury to find every fact necessary to constitute the elements of the offense of capital murder, and

as drafted and submitted, the instruction confused the jury as to whose mental state the jury was to apply.

Respondent points out, and correctly so, that while this court (pursuant to the December, 1982 amendment to the Missouri Constitution) vested jurisdiction over this case in this court, *Martin* did not empower this court to declare instructions erroneous. *State v. Hampton,* 607 S.W.2d 225 (Mo.App. 1980). It is noted that the challenged instruction was drafted pursuant to the order of our state supreme court dated April 14, 1981. That order, directed to MAI–CR2d 2.12, expressly allowed the use of the term "furthering". This court is bound by that order.

As regards appellant's contention that the instruction was erroneous by making use of the term "furthering" rather than the term "promoting", in addition to the mandate of the April 14, 1981 order to which this court must adhere, this court is not persuaded that the terms are not synonymous—at the very least they are words of substitute. While appellant states she was unable to locate any source which declared "furthering" and "promoting" to be synonyms (either by case authority or by use of creditable lexicographic materials), this court directs her attention to the definition of the term "promote" as defined in *The American Heritage Dictionary of the English Language,* which states "promote ... to contribute to the progress or growth of, *to further* ...."

In addition, *Black's Law Dictionary,* contrary to appellant's contention, does shed some light on this point. While the term "further" is defined only as an adverb, if one continues to search, he or she will find the term "furtherance," which *Black's* defines as the "act of furthering ... promotion ...." In fact, *Black's* employs the term "to further" to define "promote." Based upon these sources, it must be concluded that the term "furthering" is at least a proper substitute, if not actually a synonym, of the term "promote."

As a concluding note on this particular point, a review of *Arthur, supra,* (cited by

appellant for the rule that "an instruction must properly follow the statute"), dictates the conclusion that an instruction must adhere to the substantive law and not merely follow the wording of the statute. Furthermore, *State v. Cockrum*, 592 S.W.2d 300, 303 (Mo.App.1979), speaks to this question precisely, wherein the court stated:

"The courts have held there is no prejudicial error where equivalent or similar words were substituted for words in MAI as long as such deviation does not mislead the jury ... (citation omitted). The test is whether the instruction is substantially correct ... (citation omitted) and the court should consider the meaning of the instruction to a jury rather than resort to hypertechnical requirements of grammatical perfection and the use of certain words."

While appellant urges the rule in *Cockrum* should not apply herein, this court is not persuaded by that argument, particularly in light of this court's finding that the term "furthering" is a word of substitute for the term "promoting," "to further" is a substitute term for the term "to promote," and their interchangeable use does nothing to prevent the proper following of an applicable statute and instruction. *Arthur* and *Cockrum, supra.*

As regards appellant's further contention that the challenged instruction fails to recognize that capital murder requires a specific mental state of deliberation on appellant's part, this court will not restate the constraint placed upon it, relative to declaring instructions erroneous. It is clear that the state supreme court order dated April 14, 1981, prescribing the form for MAI–CR2d 2.12, was in effect and applicable to the instant proceedings. The record clearly shows the instruction, as drafted and submitted, followed the Notes on Use in that supreme court order.

The order dictates in part that the "conduct and the requisite culpable mental state" should be ascribed to an active participant. A review of instruction no. 8 reveals this was done in paragraph five. Consideration of the Notes on Use to the supreme court order reveal the following: Note 2 dictates the instruction form, employed in above instruction no. 8, is to be used in those cases where an accused is criminally responsible for the conduct of another *when such conduct was contemplated* by the accused *when the accused aided or joined with such other person.* Note 3 acknowledges the possible use of other related instructions, i.e. MAI–CR2d 2.14, which would allow a jury to find an accused guilty of murder second degree or manslaughter, if the jury believed the accused was lacking the required mental state applicable to capital murder. The record discloses that MAI–CR2d 2.14 was submitted to the jury herein.

Respondent directs this court's attention to the *White* case. While appellant charges that *White* is unlike the instant case (because the instruction in *White* provided the jury "some guidance" as to the criminal responsibility of a party, whereas in the instant case, the jury lacked such guidance, requiring them to find appellant guilty of the same offense as the active participants), respondent directs this court's attention to the similarity of the verdict-directing instruction in *White* and in the instant case. In *White* (at 942–43), it is noted the instruction read, in part, as follows: "that the defendant either before or during the commission of the offense of capital murder with the purpose of promoting its commission aided Hardy Bivens in committing that offense." The foregoing quote is thus compared with paragraph 5 of the instruction challenged herein, which reads: "Fifth, that before or during the commission of such offense and with the purpose of furthering its commission, the defendant aided Doyle Williams and John Morgan in committing that offense."

The court in *White* addressed an argument comparable to appellant's argument herein on the issue of mental state, and declared at 945–46:

"In this case, the jury was instructed and found defendant 'with purpose of promoting its commission aided Hardy Bivens in committing that offense' [capi-

tal murder], which is to say, acting with the conscious object of causing premeditated murder, defendant aided in causing capital murder. Thus the jury necessarily found that defendant had the same intent as the active participant, Hardy Bivens. The jury was free to find the defendant did not purposely aid in premeditated murder because it was instructed as to lesser degrees of homicide and further so instructed by Instruction No. 6."

Cross reference as to instruction no. 6 in *White,* to the instructions in the instant case, reveals that instruction no. 6 was in the form of MAI–CR2d 2.14, which was also submitted (instruction no. 7) in the instant case. The only variance between the two instructions was a difference in specific language, because of the state supreme court order of April 14, 1981, and not any variance as to substance.

This court finds the rationale and ruling within *White* not only applicable and persuasive, but controlling herein. This court appreciates appellant's apparent confusion regarding the past and current status of MAI–CR2d, but with close scrutiny of the issues related thereto within this case, it can be concluded the trial court committed no error, plain or otherwise, in its submission of the challenged verdict-directing instruction (No. 8) herein. There is no merit to appellant's point (3) and it is ruled against her.

■ Under her point (4), appellant charges the trial court erred by not dismissing the charges against her at the close of the state's case, because the state upon its proof failed to prove the corpus delicti, in that the state failed to show criminal agency in the cause of death. The record reveals this point was not properly preserved, because of appellant's failure to raise the point in her motion for new trial. *State v. Moland,* 626 S.W.2d 368 (Mo.1982); *Moore v. State,* 624 S.W.2d 520 (Mo.App.1981). This court entertains the point ex gratia and our review is for plain error.

Appellant points out that at the close of the state's case, she moved for acquittal on the ground that the state's own evidence showed that the victim, Brummett, had "run into the river" without assistance from any other person. She points out further that the information alleged the cause of death as "beating and drowning."

Appellant charges further that the evidence showed the beating did not produce the death, and further, that the actual cause of death was not proven by competent medical testimony. Appellant then concludes by alleging the state failed to prove the corpus delicti in that the state failed to prove the death of Brummett by other than natural causes, and the state further failed to prove the criminal agency of another.

In support of her argument, appellant references certain facts upon the record, and then suggests the lack of other facts, from which she then concludes supports her charged error. She first attacks the testimony of Dr. Dix, the pathologist who listed the cause of death as drowning. Appellant points out that the doctor stated Brummett sustained seven "ragged" lacerations to the skull, but that these were not life threatening. She further points out, in regard to his unequivocal statement that the cause of death was drowning, that the doctor testified there is no specific test for drowning, but rather, the diagnosis leading to such a conclusion is based on "the circumstances in which the body is found and the inclusion or absence of other lesions on the body." Appellant then points out the doctor did not testify to any other tests performed, if any. From this, appellant then concludes "the only evidence presented as to the cause of death was the speculation on the part of one physician who admitted that his diagnosis was based on the lack of any other significant wounds and the fact that the victim was found in the river."

Appellant then asserts the jury was permitted to speculate that if the victim did drown, the appellant and her companions were responsible for the drowning. Appellant correctly states that the elements of the corpus delicti require both proof of death and the criminal agency of appellant.

This statement is correct. See *State v. Lieberknecht*, 608 S.W.2d 93, 98 (Mo.App. 1980). The first element of the corpus delicti, i.e., proof of death, is conceded by appellant, in spite of her attack upon the testimony of the testifying pathologist. It is to the second element that appellant directs her strongest attack. She contends the state failed to prove that the death of Brummett resulted from any criminal agency by appellant.

Appellant's argument can be summarized as follows: Since the evidence (i.e., pathologist's testimony) revealed death by drowning and not the wounds inflicted by beating, and if the state's evidence is to be believed, then appellant and her companions actively desired and worked toward the killing of Brummett. It is noted at this juncture that the evidence is supportive of such belief. In continuing, however, appellant asserts that before she, Morgan, and Williams could accomplish their "goal", the victim drowned himself in his attempt to escape. Appellant then suggests since it is impossible to know Brummett's mental state at the moment, it is "fruitless to speculate what the victim perceived, in regard to the possible future action of Williams and Morgan."

Appellant attempts to buttress this argument by pointing out that while there was a great deal of testimony regarding the plan of action by appellant, Williams and Morgan, there was no testimony as to how the victim's death was to be accomplished. Appellant then concedes it appears the victim was to end up in the river, but it is also a fair inference he was to be killed beforehand.

Appellant then declares that when Brummett attempted his escape and drowned in the process, "he then frustrated the plans. By doing so, he prevented the actors from withdrawing from their activity. Whether or not they might have done so is immaterial. It is clear from the evidence that the jury could not have found that the victim was in full apprehension of what was intended by Morgan and Williams."

Appellant then concludes that if the jury could not have found that the victim was in fear for his life, then Brummett's action in attempting to flee must be viewed in direct contradiction to a finding of capital murder because the state failed to show the criminal agency necessary to support the charge.

Since appellant has conceded the first element of the corpus delicti, to wit, proof of death, this court will say no more on that point. As to her claim of a lack of criminal agency because there was no connection between the actions of appellant and her companions and Brummett's drowning, this court must state that it finds no credible substance to appellant's contention that she, Morgan, and Williams only planned to murder Brummett, but that plan was frustrated by Brummett running into the river, drowning, and therefore, he was not actually killed by any direct actions of appellant, Morgan, and Williams.

The record herein clearly establishes that the victim Brummett, by the acts of appellant, Morgan, and Williams, was transported to a rural road in Callaway County, beaten, handcuffed, placed in the trunk of an automobile and transported to the Missouri River. The evidence is clear that appellant, Morgan, and Williams intended these acts to result in the death of Brummett. The evidence is clear that Brummett, as a result of the acts of appellant, Morgan, and Williams, feared Morgan and Williams. Brummett's reaction to these previous acts was his attempted escape during which, as shown by the evidence, he was pursued by Williams, and Morgan fired a shot over his head as he rose and sank in the river.

Respondent has suggested to this court two sources which respondent contends answers and refutes appellant's contention.

The first is the rule announced in 40 C.J.S. *Homicide,* § 11 (1944). This court finds the passage persuasive and dispositive. It says:

"Accused is responsible if the direct cause was an act of deceased himself reasonably due to accused's unlawful conduct. In accordance with this rule a per-

son who by actual assault or threat of violence causes another, acting on well grounded or reasonable fear or apprehension, to do an act resulting in physical or corporeal injury causing his own death is responsible for homicide."

As applied to the instant case, and in addition to appellant's having planned along with Morgan and Williams the death of Brummett and appellant's transporting of Brummett to the local rural road, the above general rule would read like this: Morgan, Williams and appellant are responsible since the direct cause of Brummett's death to himself was reasonably due to the unlawful conduct of Morgan, Williams, and appellant. In accordance with this rule, Morgan and Williams, by actual assault of beating and firing a weapon, caused Brummett, who acted on well-grounded fear and apprehension, to run into the Missouri River and drown. Appellant, Morgan, and Williams are responsible for the homicide. See also *State v. Deyo,* 358 S.W.2d 816 (Mo. 1962), a case where the defendant's lover placed strychnine in a vitamin bottle of the defendant's husband with knowledge that the vitamins were taken regularly by the husband. The husband took the vitamins without any affirmative action or direct action by the lover or the defendant. The husband died. Defendant's conviction was affirmed on appeal.

The trial court did not commit error, plain or otherwise, by its refusal to sustain appellant's motion for acquittal. The evidence upon proof of the state's case established and proved both requisite elements of the corpus delicti, to wit, the death and appellant's criminal agency.

Appellant's point (4) is meritless and is ruled against her.

Under her point (5), appellant charges that the trial court committed plain error when it failed to set aside the jury verdict because there was prejudicial deviation between the information and the proof upon trial.

Appellant admits and the record establishes that prior to this appeal, this point was never raised. She seeks review under the plain error rule, Rule 29.12(d). Under such review, a trial court will not be held to have committed error absent a showing of manifest injustice or a miscarriage of justice.

Reduced to simple form, appellant argues that she was charged, by information, as an "active participant" in the death of Brummett, *but* the evidence and the court's instructions revealed at best she was only an inactive participant or "aider". She contends this amounted to a manifest injustice requiring reversal.

The pertinent portion of the information reads as follows: "[T]he defendant, acting in concert with others, in violation of section 565.001, RSMo committed the class A felony of capital murder ..." The pertinent portion of the verdict-directing instruction (no. 8 above) reads as follows: "Fifth, that before the commission of such offense, and with the purpose of furthering its commission, the defendant aided Doyle Williams and John Morgan in committing that offense ..."

Appellant provides this court with a careful study of the historical development of the "accessory" statute, and concludes she is unable to find any authority precisely on the issue. She concedes the information generally follows the language of § 565.001, RSMo, but questions whether the information contains all the essential elements of the offense so as to prevent her from ever again being charged.

Appellant claims the information never states that she "aided", "promoted", or "attempted" to commit capital murder or to assist others in the commission of the act. Thus, she concludes she was charged as an active participant in the death of Brummett, but upon proof and under the instructions was convicted of aiding in Brummett's death.

The issues presented by this alleged error are whether the term employed by the information "acting in concert with others" is a term descriptive of only *active participation* or whether that term can be interpreted to include *inactive participation* as well.

If it be determined that "acting in concert" has a dual meaning, then appellant's contention of a fatal deviation between the information, proof and instructions is without substance. If the term be construed as exclusively descriptive of only active participation, then it must be determined if such deviation was under all of the circumstances prejudicial.

There appears to be no authority in our state that confronts this question relative to the offense of capital murder. This court has, therefore, researched other areas of the criminal law, plus foreign jurisdictions, for possible analogous circumstances or in the case of foreign jurisdictions, the possibility of a definition of the term.

It is not contended by appellant that the result, i.e., that she is subject to penalty the same as a principal offender, is the same, whether the term includes both active and inactive participation, but rather, as noted above, her contention is the fatal deviation between the information and the evidence and the instructions. Our caselaw is replete with authority that the party who is an aider is found to have purposefully aided in capital murder and thus has the same intent as an active participant, and assuming everything else is equally established, the party is liable to the same degree as the active participant. *State v. White,* 622 S.W.2d 939, 945 (Mo. banc 1981).

Appellant's point (5) fails for the following three reasons: First, appellant makes an incorrect assumption relative to the definition and interpretation of the term "acting in concert". Appellant incorrectly assumes this term, to the exclusion of anything else, designates her as an "active participant" or principal actor as opposed or to the exclusion of any designation of appellant as an "inactive participant" or aider. The term "acting in concert" is dependent upon the basic or key word *concert*. *Concert* has been defined as an "agreement of two or more persons or parties in a plan, design or enterprise; union formed by such mutual agreement; accordance, harmony." *The Oxford English Dictionary,* Vol. II (1933), p. 764, and, "1: to plan together:

settle or adjust by conference, agreement, or consultation. 2: to make a plan for: devise, arrange: to act in harmony or conjunction . . . . 1a: agreement in a design or plan: union formed by mutual communication of opinions and views: accordance in a scheme b: concerted action." *Webster's Third New International Dictionary* (1971), p. 470.

■ The word *concert* affords no description of the "active or inactive" status of a party or any of the parties to the agreement. The addition of the words "acting in" afford no further identification of the "active or inactive" status of the parties. Thus, when the term "acting in concert" is used, even within an information, it is as equally applicable to a party who, by further declaration of his or her acts, is capable of being described as an aider as it is or would be applicable to a party who, by further declaration of his or her acts is capable of being described as an "active participant" or principal.

It has been said that "[a]iding and abetting need not in every case be synonymous with 'acting in concert'. However, on the facts of this case, as to defendant's participation in the rape, the terms may be so viewed." *People v. Wheeler,* 71 Cal.App.3d 902, 906, 139 Cal.Rptr. 737, 740 (1977) (citation omitted). For yet another case where the term "acting in concert" was held synonymous with the term "aiding and abetting", see *People v. Calimee,* 49 Cal.App.3d 337, 122 Cal.Rptr. 658 (1975).

■ Thus, the conclusion which must be reached is that the term "acting in concert" does not exclusively designate an accused as a principal (active participant), but under prescribed circumstances, such as the instant case, the term has equal applicability to an aider (inactive participant) within an information. Appellant's contention fails because it is premised upon an incorrect assumption.

■ Assuming arguendo that the above rationale and conclusion were not derived, appellant's point would still fail. This second reason stems from the fact that

a party can be charged (by indictment or information) as a principal, and then tried and convicted as an aider without prejudice because of the "deviation" between the information evidence and the court's instructions. This result is reached because the common law which recognized principals and accessories (before the fact and after the fact) was abrogated by statute (§ 556.-170, RSMo 1969, now repealed, see § 562.-036, § 562.041, RSMo 1978), and our law now recognizes and treats principals and aiders the same (assuming all the other requisite elements are shown by proper proof). There is no need for an "aider" to be present when the intended act is committed or completed, and if the evidence reveals the "aider" possessed the required intent as did the "principal" in a capital murder, both are liable to the same degree. *State v. White,* 622 S.W.2d 939, 945 (Mo. banc 1981). Aiders who act with common purpose with active participants or who, before or during the commission of a crime, intentionally and knowingly aid or encourage the commission of an offense, are guilty of the offense. *State v. Lyell,* 634 S.W.2d 239, 241 (Mo.App.1982). If an accomplice is possessed of the requisite culpable mental state and purposefully promotes the offense, he is equally guilty of the offense. *State v. Logan,* 645 S.W.2d 60, 64 (Mo.App. 1982). That an "aider" can be charged as a principal, see *State v. Poor,* 533 S.W.2d 245, 251 (Mo.App.1976). There is no merit to appellant's contention that there was a prejudicial deviation between the information and the evidence and instructions to the jury on the basis she was charged as a principal and then tried and convicted as an aider.

 The third and final reason appellant's point five has no merit (assuming arguendo there was a "variance" between the information and the verdict-directing instruction) is because the information, when compared with the instruction, did not charge a separate or distinct crime. Such a variance is fatal only where a new and distinct offense is submitted to the jury from that which the accused was charged. *State v. Singleton,* 602 S.W.2d 3, 8 (Mo.App.

1980); *State v. Harris,* 618 S.W.2d 706, 708 (Mo.App.1981). In addition, for such a "variance" to be fatal, it must be shown it "was material to the merits of the case and prejudicial to the defense of the defendant." *State v. Sallee,* 624 S.W.2d 184, 187 (Mo.App.1981). Appellant has failed to establish that such a variance was prejudicial to her defense.

The information herein was sufficient to notify appellant of the charge lodged against her. It was sufficient to permit her to prepare her defense, and to prevent her from ever being tried upon the same charge. *State v. Williams,* 611 S.W.2d 26, 31 (Mo. banc 1981).

In summary, it is concluded that the term "acting in concert", as used in the information, is interpreted as a term without designation as to the "active" or "inactive" status of a party's participation in the offense and it is held herein that the term "acting in concert" within an information is as equally applicable to an "aider" as it is to a "principal", and appellant's assumption that the term is exclusively applicable to define or otherwise designate a party as a principal is incorrect. In addition, appellant's contention is meritless because there is no prejudicial error wherein an information charges an accused as a principal, and the accused is later tried, the jury is instructed, and the accused is convicted as an aider. Finally, appellant has not only failed to establish any "variance" or deviation between the information and the instruction, but assuming for purposes of discussion that she had, her contention would still fail because of her lack of showing any material deviation or variance to her defense of the charges against her.

There was no error, plain or otherwise, in the trial court's not having set aside the jury verdict. Appellant's point (5) is meritless and is ruled against her.

 Under her point (6), appellant charged that the trial court committed plain error in its failure to properly follow MAI–CR2d 1.08(b).

Specifically, appellant points out that during the trial, the trial court recessed the proceedings on four different occasions. It is appellant's contention that since the trial court did not use the precise language or words of instruction 1.08(b) to remind the jury, the trial court committed plain error. This court has reviewed each recess and has determined the following. It is first noted that this alleged error is presented for the first time on this appeal, thus our review is for plain error. Rule 29.12(b).

Respondent cites *State v. Boyd,* 600 S.W.2d 97, 100 (Mo.App.1980) for the rule that where error for failure to read the "guidance" instruction pursuant to MAI–CR2d 1.08 was not presented until the filing of the motion for new trial, there was nothing preserved for appellate review. *Boyd* is dispositive of the question herein as well. It is further noted, however, under the Notes on Use (Note 3) to MAI–CR2d 1.08, the following is found: "3. The 'reminding' instruction, MAI–CR2d 1.08(b), may be given in any form so long as it complies with Section 546.230, RSMo."

Section 546.230, RSMo 1978 provides the following:

"546.230. Jury may separate, when.— With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial in all cases of felony, except in capital cases; and in misdemeanors the court may permit such separation of the jury of its own motion, but when the jurors are permitted to separate, after being impaneled as provided for in this chapter, and at each adjournment the court must admonish them that it is their duty not to converse among themselves, nor to suffer others to converse with them or in their hearing on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them."

Taking the provision of Note 3 to MAI–CR2d 1.08(b) and the wording of § 546.230, three of the recesses and the action of the trial court herein are compared. At the time of the first recess, the court declared to the jurors:

"Again, I would remind the members of the jury panel, please do not discuss the case among yourselves, or with others, or with anyone in your presence, and I would ask that you form no opinion, or express any opinion, at this time, with regard to the case that is before you, until it's finally submitted to you for your ultimate decision. We'll be in recess. Thank you."

At the time of the second recess, the trial court declared:

"Mr. Woodson, we're going to take a recess, at this time, so Mr. Jenson can just remain here available. At this time I admonish the Members of the Jury Panel not to discuss the case among yourselves, with anyone else, or have anyone, or allow anyone, to discuss it in your presence; and I'd ask that you not form any opinion, or express any opinion, about the case until the case is finally submitted to you for your ultimate decision. Please take charge of the jury Mr. Woodson. We'll be in recess about 15 minutes. Have them back in here at 1:15."

At the time of the third recess, the trial court declared:

"At this time, we're going to take a recess; and again I'd ask the Members of the Jury not to discuss the case among yourselves, or with anyone else, or allow anyone to discuss it in your presence. I'd ask you not to form or express any opinion as to anything that you've heard with regard to the case, until it's finally submitted to you for your final and ultimate decision. Mr. Woodson."

As regards the final recess challenged by appellant, the record reveals that recess was declared out of the presence of the jury and hence MAI–CR2d 1.08(b) was not even applicable. The record reveals that final recess was for the day while the proceedings had already recessed and the court with counsel discussed matters in chambers.

There was no *error, plain or otherwise.* The record reveals that the trial court com-

plied with MAI–CR2d 1.08(b) and § 546.230 wherever applicable.

Appellant's point (6) is meritless and is ruled against her.

Under her final point (7), appellant charges that the trial court committed plain error in not granting her motion for a new trial because the state had suppressed certain evidence.

Appellant's argument under this final point is twofold. She first contends that the state failed to disclose a statement of one Pam Mealy. Secondly, she contends the state suppressed a statement given to the authorities by one Larry Pirner.

The record reveals there was oral testimony submitted by both parties at the hearing for appellant's motion for new trial.

It must be noted from the outset that appellant contends the trial court committed plain error upon failure to exercise its discretion to find a willful suppression of evidence by the state. Appellant bears the burden to allege and prove the suppression and the trial court sits as the trier of fact in such matters. *State v. Jones,* 575 S.W.2d 899, 902 (Mo.App.1978). The trial court's ruling thereon is not to be disturbed "so long as it is based on a reasonable foundation of fact and the discretion is not arbitrarily exercised." *Jones* at 902, citing also to *State v. Pennington,* 392 S.W.2d 5, 9 (Mo.App.1965).

At the hearing on appellant's motion for new trial, Pam Mealy testified. In summary, she testified that she was at the restaurant sometime after 1:30 a.m. on October 9, 1980. She stated that she saw the victim Brummett with a woman who was not appellant. She further testified that she wrote out a report for the sheriff's office, but did not know who took her statement. She further testified that she *did not* tell the officer who took her statement, that it was *not* appellant with the victim that particular night. She further stated that she was shown no photographs of any persons.

The testimony at the post-trial hearing also included the officer in charge of the investigation. This officer testified to his knowledge that nobody interviewed Pam Mealy as she alleged. He based that conclusion upon the absence of Mealy's name on the investigating log, that he did not have any report from her, and her name did not appear on a "lead card".

What is obvious from appellant's argument under this point is that she bases her contention upon a statement made by the prosecutor *in a related case during the motion for new trial on the related case* (i.e., *State v. Doyle Williams, supra*). The statement from the related case is as follows:

"Mrs. Garber: Judge, I'm sorry, I believe there is in my file a statement of Miss Mealy where she was asked to identify some photographs. And I don't remember what the outcome was, whether she identified someone else or no one. But, I know she didn't identify Betty Coleman, and I believe that is in my file, I thought she was talking about a recent report. And I think there is an old report from Mr. Lee on that. And I indicated to the court that I didn't have one, I do have one."

The issue which this court must resolve is whether appellant's evidence upon her motion for new trial established that the state willfully suppressed evidence. *Jones, supra.* The strongest portion of appellant's evidence is an unsupported statement from or by a prosecutor in a related case (i.e., *Williams, supra*). The record further shows Mealy's contention that she gave a statement to authorities but could not recall to whom she gave the statement, that she observed no photographs and she *did not* advise the officer that it was *not* appellant with the victim Brummett the night of October 9, 1980. In contrast with the Mealy testimony, the officer in charge of the investigation testified to no report from Mealy and no case record of her giving any report. From this, the trial court, based upon the evidence, rendered a factual determination therefrom and denied appellant's motion.

It is noted that this same point was raised in *Williams, supra,* and our state supreme court ruled that in "viewing the record as a

whole, the evidence adduced by the defendant does not rise to the level of materiality necessary to warrant a new trial." This court concludes that ruling has equal application to the instant case. As regards the testimony of Pam Mealy, appellant has failed to carry her burden of proof that the respondent willfully suppressed evidence. There is no showing that the trial court abused its discretion. *Jones, supra.*

The second portion of appellant's argument under this, her final point, centers upon the affidavit of one Larry Pirner. It is noted that this affidavit was presented for the first time on this appeal and was never a part of the record at trial. This court, on appeal, is bound to the record and the evidence submitted at trial. *State v. Worley,* 353 S.W.2d 589, 596 (Mo.1962); *State v. Andrade,* 534 S.W.2d 595, 597 (Mo. App.1976).

The affidavit states that Pirner gave a signed statement to an officer (unidentified) in which he stated he had observed the victim Brummett with a woman (not the appellant) at approximately 12:30 a.m. on October 10, 1980 at the Mark Twain Restaurant.

Appellant contends that the foregoing affidavit should be made a part of the record herein as newly discovered evidence following her trial.

There is authority which precludes the reopening of criminal proceedings long after the time of trial for purposes of relitigating the innocence of the accused on the basis of newly discovered evidence. *State v. Wynn,* 357 S.W.2d 936 (Mo.1962); *United States v. White,* 557 F.2d 1249 (8th Cir. 1977), cert. denied, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

 It is noted that this same contention was presented in *Williams* and rejected by our state supreme court. It is obvious from the entire record that the purpose of the Pirner affidavit is to impeach the testimony of two state witnesses who at trial testified to observing the victim, Brummett, with appellant in the Mark Twain Restaurant. Our courts have prescribed certain requisites for the purpose of securing a new trial on the basis of newly discovered evidence. These include: "(1) that the evidence has come to the knowledge of the defendant since the trial, and (2) that it was not owing to his want of due diligence that he did not discover it sooner, and (3) that the evidence is so material that it would probably produce a different result on a new trial, and (4) that it is not cumulative only or merely impeaching the credit of the witness." *State v. Harris,* 413 S.W.2d 244, 247 (Mo.1967); *State v. Taylor,* 589 S.W.2d 302, 305 (Mo. banc 1979). There is nothing before this court which reveals this "newly discovered evidence" complies with any of the foregoing requirements.

 There is nothing, either in the testimony of Pam Mealy or the tendered affidavit of Larry Pirner, so material as to inject reasonable doubt where none existed previously. There is nothing in the Mealy testimony or the offered affidavit which would result in a reversal of appellant's conviction. "A new trial is not automatically required when evidence is disclosed after trial which might possibly be useful to the defense but not likely to have changed the verdict." *Williams, supra,* citing *State v. Nolan,* 499 S.W.2d 240, 250 (Mo.App.1973).

Thus, in conclusion, it is found there was no error, plain or otherwise, in the trial court's exercise of its discretion in determining the factual issues before it upon appellant's motion for new trial and the trial court's finding there was no willful suppression of evidence. Additionally, it is noted that the Pirner affidavit is not subject to any form of test as to its veracity and creditability on this appeal. It is further noted that the offered affidavit obviously was directed toward impeaching the testimony of two state witnesses as noted above. There is nothing to show that either the testimony of Mealy or the affidavit of Pirner would likely have changed the verdict.

There is no merit to appellant's final point and it is ruled against her.

After complete review of all the errors alleged by appellant, it is concluded there

was no error and the judgment is in all respects affirmed.

All concur.