**John W. CHAMBERLAIN,**
**Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 13714.**

Missouri Court of Appeals,
Southern District,
Division Three.

Feb. 19, 1985.

Motion for Rehearing or to Transfer to
Supreme Court Denied
March 7, 1985.

Application to Transfer Denied
April 30, 1985.

Blair Buckley, Jr., Public Defender, Caruthersville, for movant-appellant.

John D. Ashcroft, Atty. Gen., Thomas Carter, II, Asst. Atty. Gen., Jefferson City, for respondent.

GREENE, Judge.

Movant, John W. Chamberlain, was jury-convicted of first degree sexual assault (§ 566.040[1]) on his 15-year-old daughter, Faye, and, in accordance with the jury verdict, was sentenced to seven years' imprisonment. The conviction was affirmed on

1. Statutory references are to RSMo 1978. Section 566.040.1 provides that "[a] person commits the crime of sexual assault in the first degree if he has sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old."

appeal. *State v. Chamberlain*, 648 S.W.2d 238 (Mo.App.1983).

Evidence introduced at trial in support of the verdict was that while Chamberlain and Faye were en route to the hospital to check on a younger child who was ill, Chamberlain stopped the pickup truck, forced Faye to disrobe, and had sexual intercourse with her. Faye reported the assault on a child abuse hot line. She testified that her father had been having sexual intercourse with her since she was thirteen, but that she had not reported it previously because her father had threatened to hurt her, or kill her, if she did. In his testimony, Chamberlain admitted that Faye accompanied him on the trip to the hospital, but denied the sexual intercourse.

After affirmance of his conviction, Chamberlain filed a Rule 27.26[2] motion to vacate his sentence and set aside his conviction. Grounds alleged in the motion were:

1) His trial counsel was ineffective in that he did not interview and present evidence from several witnesses who would have contradicted Faye's testimony;

2) His trial attorney "colluded with the prosecuting attorney as well as the judge;" and

3) His daughter, Faye, his wife, and two other women alleged to be his wife's lesbian lovers conspired to file the sexual assault charge because the daughter did not like him and the mother wanted to be free to pursue her deviant sexual behavior.

An evidentiary hearing was held, after which the motion court filed findings of fact, conclusions of law, and a judgment denying relief. In its findings and conclusions on the three issues raised by Chamberlain in his motion, the motion court found:

1) "Movant has not carried his burden of proof on his claim of ineffectiveness of counsel. The Court finds that movant's attorney did exercise the customary skill and diligence that a reasonably competent attorney would exercise under the circumstances. There was no prejudice to movant

arising from any acts or omissions on the part of his attorney;"

2) "There is no evidence of collusion between movant's attorney, the prosecuting attorney, and the judge;" and

3) "There is no credible evidence proving a conspiracy to prosecute or convict movant."

■ On appeal, Chamberlain contests only those findings and conclusions concerning effectiveness of counsel. Our review is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous; i.e., that we are firmly convinced that the motion court made a mistake. *Howard v. State*, 627 S.W.2d 643, 644 (Mo.App.1981); Rule 27.26(j).

In his sole point relied on here, Chamberlain argues the motion court erred in finding his trial attorney was competent because the attorney did not interview nor call as witnesses persons who could have discredited the testimony of the complaining witness by "showing she was at a different place from the place where she testified she was assaulted at the time of the alleged assault." A synopsis of the testimony of movant's witnesses given at the 27.26 hearing, and the rebuttal testimony of Chamberlain's trial attorney, Terry McVey, is as follows:

(A) JOHN CHAMBERLAIN, JR., movant's son, testified that he was at the family home the evening of the alleged assault when a younger child became ill. John's mother sent him "downtown" to retrieve Chamberlain and to have him call an ambulance, which he did. When Chamberlain and the ambulance arrived at the home, Mrs. Chamberlain accompanied her sick daughter to the hospital in the ambulance. Chamberlain left the house to borrow a pickup and returned. He instructed John to tell Faye to stay there and tend to the younger Chamberlain children when she came home. John said Faye came in 30–40 minutes later, and refused to stay. He

---

**2.** Unless otherwise indicated, all references to  rules are to Missouri Rules of Court, V.A.M.R.

said McVey never asked him what he knew about the alleged assault, nor was he used as a witness at trial.

REBUTTAL:

McVey did interview John Jr. but was not told that Faye came home after Chamberlain had left for the hospital and, therefore, did not have any reason to call John Jr. as a witness at trial. Should John Jr. have testified in this manner, his testimony would have contradicted his father's because Chamberlain testified that Faye did accompany him to the hospital.

(B) REBECCA WARD, movant's niece, said that Faye ate dinner with her at her mother's house the night of the alleged assault. At a later date, Becky was at Judy Cook's home when Faye arrived crying. She told Becky and other persons at the house that Chamberlain had hit her, and she wanted "to get him back." Judy suggested that Faye call the child abuse hot line and tell them that her father had molested her. Becky "thinks" she told McVey about this, and did tell him that on several occasions, Faye had told her her father was molesting her.

REBUTTAL:

McVey talked to Becky twice and had subpoenaed her, but decided not to call her as a witness because she would be open, on cross-examination, to testifying that Faye had complained to her on several occasions about her father sexually assaulting her. Becky never told him that Faye made the hot line call to "get even" with her father, nor did she tell him that other witnesses had heard Faye say that she wanted to find a way to get back at her father.

(C) RICHARD CHAMBERLAIN, movant's brother, testified he was present when Faye told several persons gathered at Judy Cook's residence that she wanted to get her dad out of the way so that she could do as she pleased. Richard said that Judy told Faye to call the hot line and to say that her father was sexually abusing her. Faye later told Richard that she had lied when she said her father had sexually abused her. Richard could not be located by McVey to be interviewed prior to the trial, and would not reveal his whereabouts so that he could be subpoenaed as a witness. On cross-examination, Richard admitted three prior felony convictions and stated he was in the state of Texas at time of trial.

REBUTTAL:

McVey made several attempts to locate Richard, but was unsuccessful. He did not seek a continuance to try to locate Richard because he was afraid that if he did so, the state would amend its information to charge movant as a persistent offender, since he had been convicted of two prior felonies, thus raising a possibility that Chamberlain would receive a 15-year sentence, if convicted, rather than a maximum of seven, which he did receive.

Chamberlain testified in his own behalf and recanted his trial testimony that Faye had ridden in the truck with him on the way to the hospital. In explanation as to why he now alleged that she was not with him, Chamberlain said, "I had my times mixed up—going to Kennett, I've been there so many times."

McVey testified he had visited Chamberlain in jail on 12–15 occasions for 45 minutes to an hour each time, and that he had spent 73 hours working on the case.

The motion court was under no obligation to believe movant and his witnesses, and evidently did not do so. It was in its discretion to determine what evidence was credible and what evidence was not to be believed. *Shoemake v. State*, 462 S.W.2d 772, 775 (Mo. banc 1971). The motion court, as reflected by its findings and conclusions, chose to believe McVey and had a right to do so. A full review of the record convinces us that the findings, conclusions, and judgment of the trial court are not clearly erroneous.

Judgment affirmed.

CROW, P.J., and TITUS and FLANIGAN, JJ., concur.