**Walter J. BLAIR, Petitioner,**

v.

**Bill ARMONTROUT, Warden, Missouri State Penitentiary, Respondent.**

No. 85–0155–CV–W–5.

United States District Court, W.D. Missouri, W.D.

Aug. 22, 1986.

Bernard Rhodes, Gage & Tucker, Kansas City, Mo., for petitioner.

John B. Williams, Jay D. Haden, Office of County Counselor, Kansas City, Mo., for respondent.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Petitioner Walter Junior Blair, who is currently confined in the Missouri State Penitentiary, Jefferson City, Missouri, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Blair was convicted of capital murder for the 1979 contract killing of a rape victim who was scheduled to testify. Blair was sentenced to death, and on March 14, 1985, this Court granted Blair's request for a stay of execution pending resolution of this habeas petition. On August 9, 1985, this Court granted Blair's motion to disqualify the Attorney General's Office of the State of Missouri from representing the respondent, as Blair's former attorney who represented him in connection with his state post-conviction remedies became employed as an Assistant Attorney General in the Criminal Division. Thus, it was not until November 27, 1985, that substitute counsel answered the Court's show cause order why a writ of habeas corpus should not issue. Then on June 3, 1986, Blair filed his traverse to the State's response.

Blair advances basically five claims for the Court's consideration:

1. At the time of trial there existed a leniency agreement between the prosecuting attorney's office and a State's witness, Ernest Jones, which was undisclosed to Blair and his defense attorneys, despite proper request, in violation of the Fourteenth Amendment Due Process Clause.

2. The jury at the trial was "death qualified," in violation of the Sixth Amendment, and the Fourteenth Amendment Due Process Clause.

3. Blair's attorney was excluded from a pre-trial interrogation, despite request, in violation of the Fifth, Sixth and Fourteenth Amendments.

4. The trial court failed to instruct the jury on the offense of murder in the first degree in violation of Article I, § 10 clause 1 of the Eighth Amendment, and the Fourteenth Amendment Due Process and Equal Protection clauses.

5. The jury instructions and argument by the prosecuting attorney constituted an overreaching plea for death in violation of the Eighth Amendment and the Fourteenth Amendment Due Process.

For the following reasons, the petition for a writ of habeas corpus will be denied.

*1. Undisclosed Leniency Agreement* [1]

Blair charges that the State failed to disclose explicit or implied agreements made between Ernest Jones, a witness for the prosecution, and his attorney in connection with Jones' pending assault, possession and burglary charges prior to his testimony at Blair's trial. Blair contends that the State, by withholding such facts, rendered his trial fundamentally unfair in violation of Due Process Clause of the 14th Amendment of the United States Constitution.

Blair alleges that the suppression of the facts surrounding the "deals" between the witness and the State and the failure of Assistant Jackson County Prosecutor James H. Bell to correct Jones' false testimony, significantly prejudiced the jury and provided Jones with an incentive to alter his testimony in exchange for lenient treatment on his pending charges before the court. Blair relies on the recent case of *United States v. Bagley*, — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), in which two state witnesses made false statements denying any arrangements with the State for their testimony during Bagley's trial.

The court found that the prosecutor failed to disclose evidence that the defense might have used to impeach the witnesses by showing bias or interest, thereby withholding evidence favorable to the accused. *See also, Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1962). However, the court qualifies this non-disclosure by requiring a finding of materiality of the evidence. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 105 S.Ct. at 3384. *See also, United States v. Bigeleisen*, 625 F.2d 203 (8th Cir.1980).

The State alleges, however, that Jones had no knowledge of any arrangement between his attorney and Bell, and therefore, he was in no way influenced in his testimony at Blair's trial. This statement is supported by Jones' denial, at Blair's trial, that any "deals" had been made with him on his three pending charges (Trial Tr. at 1498). However, this contradicts the testimony given by Bell himself at Jones' sentencing (subsequent to Blair's trial) in which he stated that he had discussed with Jones and his attorney the possibility of a "lenient disposition" of Jones' case (pending assault, possession and burglary charges) in exchange for his cooperation. Further, Jones' attorney, Peter Sterling, stated at Blair's evidentiary hearing on Rule 27.26 motion that he advised Jones that he would not go to the penitentiary if he testified in Blair's case. Both counsel stated, under oath, that Jones had been informed of a possible plea bargain with the State for his testimony.

■ The State further contends that *even if* such facts had been disclosed, the outcome of the case would not have been altered. The State notes that Jones had already admitted to "potentially impeaching facts" in his testimony whereby, in exchange for his testimony, he would not

**1.** The State concedes that Blair has exhausted his state remedies on this issue.

be charged with capital murder, his pending probation would not be revoked and that he was the recipient of a $2,500 award. The State contends that an additional alleged "deal" could not materially affect the jury's belief in Jones' testimony. Furthermore, Jones' testimony, while certainly helpful in developing the facts of the crime, was not essential in proving Blair's guilt. Blair's three separate confessions, and the testimony of Sharon Jones (no relation to Ernest Jones), showed that Blair had been hired to murder, that he stalked the victim over a period of weeks, and that he eventually killed her. Thus, under the *Bagley* standard, the Court finds there is no reasonable probability that had this evidence been disclosed, the outcome of the trial would have been different.

### 2. Death Qualification of Jury

Blair alleged that the "death qualification" of the jury panel at his trial did not result in the selection of an impartial jury, in violation of the Sixth Amendment of the U.S. Constitution. The State argues failure to exhaust state remedies, but this argument is moot in light of the case of *Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), where the United States Supreme Court overruled the recently decided 8th Circuit decision of *Grisby v. Mabry*, 758 F.2d 226 (8th Cir. 1985) by holding that the removal of prospective jurors prior to the guilt phase of a capital trial who possess a strong opposition to the death penalty does not violate the Sixth Amendment right to a jury selected from a fair cross-section of the community.

Therefore, Blair's second point is not a basis for issuing a writ of habeas corpus.

### 3. Exclusion of Blair's Attorney [2]

Blair alleges that although he waived his *Miranda* rights to have an attorney present during his interrogation at the prosecutor's office, such waiver is "inoperative because of his belief that an assertion of his *Miranda* rights would be ineffectual." Blair does not contend, however, that

prohibiting his attorney from seeing him constituted a Sixth Amendment violation of his right to counsel. At the time in question, Blair was merely being held for interrogation purposes, before any charges had been formally brought against him. *See Moran v. Burbine*, —— U.S. ——, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); and *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

Blair claims that according to his testimony at the suppression hearing, he knew that Kevin Locke, his attorney, was denied access to him by the members of the prosecutor's office. [Trial Tr. 122]. Aware of Locke's unsuccessful attempts to speak with him, Blair alleges that this affected him in his decision to waive his *Miranda* rights. He claims that he believed all attempts to reach an attorney would be futile, so he consented to answer the prosecutor's questions. Blair relies primarily on *Moran v. Burbine, supra*, in which a suspect, unaware of his attorney's attempts to reach him, voluntarily waived his *Miranda* rights to have counsel present. The Court in that case found that the defendant's *Miranda* rights were *not* violated, but noted that any unsuccessful attempt by counsel to contact a suspect would in no way affect that person's waiver of his rights "unless he were at least aware of the incident." *Moran*, 106 S.Ct. at 1142. This tends to suggest that the court would decide differently if Blair had in fact known that Locke was denied access to him. However, all of the testimony of the members of the prosecutor's office and that of Locke himself is contrary to Blair's claim.

According to the testimony of Kevin Locke during direct examination by Mr. Schwarz at Blair's suppression hearing, Locke stated that after he arrived at the prosecutor's office, he saw Blair in the hallway. Blair, in response to a question of one of the men holding him, stated, "That's my attorney." No further conversation between Blair and Locke ensued. Locke was then brought into the office

**2.** The State also concedes exhaustion of remedies on this point.

library by Pat Hall, at which time Pat informed Locke that he would be unable to speak with Blair. No one else was in the room at that time, and the door to the library was shut. After their conversation, Locke left the prosecutor's office and proceeded to the Court of Appeals. At no time, according to Locke, did Blair overhear the conversation. (Suppression Hearing Tr. p. 126–128).

■ This Court finds that Blair knew at all times that he could refuse to speak and request a lawyer, and that he was aware of the State's intention to use the videotaped confession to secure a conviction; thus, his waiver of his *Miranda* rights was valid. *Moran,* 106 S.Ct. at 1142.

### 4. Failure to Instruct on First Degree Murder

Blair contends that the trial court erred in failing to instruct the jury down on first degree murder, constituting an ex post facto violation of Art. I, § 10, cl. 1 of the United States Constitution, and resulting in an arbitrary and capricious application of the death penalty in violation of the Eighth Amendment.

The State initially contends that because Blair failed to raise all his newly-asserted constitutional grounds on direct appeal, and Rule 27.26 review was precluded, there is a procedural default under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and Blair must establish "cause" and "actual prejudice" for this default. The State will not be prejudiced by this Court's assumption that Blair has established these necessary elements.

Within the last few years, Missouri has made a number of statutory changes which has resulted in a good amount of confusion surrounding criminal instructions on homicide. Effective January 1, 1979, § 556.046 (R.S.Mo.1978) was amended to *exclude* first degree felony murder as a lesser and included offense of capital murder. On September 28, 1979, § 565.006.1 (R.S.Mo.1979) was amended to require *only* the charging of any lesser and included offenses supported by evidence. Although both stat-

utes appear to be straightforward in their application to jury instructions, the result, however, has been considerably less than clear.

The first major case to decide the issue of a first degree murder instruction was *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982). There the court found that the defendant was not entitled to an instruction down to first degree murder even though he was only formally charged with capital murder. The court again considered this question in the case of *State v. Goddard,* 649 S.W.2d 882 (Mo. banc 1983), involving a conviction of first degree murder when only a capital murder charge was made. Unlike *Baker,* in which the defendant claimed that the court erred in *failing* to instruct down on capital murder, Goddard asserted that the court erred because it *did* instruct down to first degree murder. The court in *Goddard* found that because the defendant was tried prior to the *Baker* decision, *Baker* was to be applied prospectively and not retroactively on first degree murder jury instructions, thereby affirming Goddard's first degree murder conviction. Similarly, Blair argues that following the ruling in *Goddard,* and applying the *Baker* decision prospectively (in that Blair's trial was also prior to the decision), the trial court erred in failing to instruct the jury on the lesser offense of first degree murder.

However, it is important to note that the court in *Goddard* affirmed the first degree murder instruction on the basis of the supporting evidence. There are only two ways a defendant can be charged with a criminal offense: (1) expressly by the language of the indictment or information; or (2) impliedly because the offense is a lesser included offense of that which is expressly charged. *Goddard,* at 891. The circumstance of the *Goddard* case determined that the evidence which supported the instruction on first degree murder was exactly the same evidence which would have supported a conviction of capital murder. Therefore, although the defendant was not separately charged with first degree mur-

der, which would have been required for a conviction if the court had opted to follow the *Baker* decision, the court in *Goddard* bypassed this restriction by finding that a separate charge of first degree murder *could* have been brought with the identical evidence from the capital murder charge, thereby supporting the first degree murder conviction. On this basis, the court found that the defendant was not prejudiced by the first degree murder instruction.

It appears that the Missouri Supreme Court wanted to affirm the first degree murder conviction without expressly overruling the *Baker* decision or the applicable statute. What Blair fails to recognize is that the evidence which supported a conviction of capital murder in his case would not also have supported a conviction of first degree murder. In addition, the trial court found there was insufficient evidence to support a *separate* charge of first degree murder based on what Blair alleged was an underlying felony of kidnapping (even if *Baker* is applied only prospectively). Therefore, even following Blair's reasoning that, like *Goddard*, his trial occurred prior to the *Baker* decision and thereby should have included an instruction on first degree murder, nevertheless the evidence presented at the trial would have been insufficient to support a conviction of first degree murder. *See, State v. Coleman*, 660 S.W.2d 201 (Mo.App.1983).

Further, the Missouri Court of Appeals has also considered this question of jury instructions on first degree murder in *Coleman,* supra. The defendant in that case alleged that the jury should have been instructed on first degree murder on the basis of the evidence which, like Blair, the defendant believed was sufficient to support a kidnapping charge and, therefore, first degree felony murder. The court, however, was bound to follow not only the decision of *Goddard*, but also *Blair* and *Baker*. *See, State v. Holland*, 653 S.W.2d 670 (Mo. banc 1983). The court found the factual circumstances in *Blair* comparable to *Coleman*, in which there lacked any evidence to support a charge of kidnapping. The question before this Court is not the existence or non-existence of sufficient evidence to support a kidnapping charge. That was a factual matter that was determined by the trial court. The issue here is whether, according to the *Baker* decision, first degree murder is not a lesser included offense of capital murder, and no instruction as such should have been made. It would appear to make more sense to apply the statute prospectively from its date of effectiveness, January 1, 1979 (thereby taking into account the period of time between January 1, 1979 and the *Baker* decision). *See State v. Goddard*, 649 S.W.2d 882 (Mo. banc 1983) (Welliver, J., dissenting). However, the Missouri Supreme Court has continually chosen to apply the decision prospectively from the date of the *Baker* decision: August 23, 1982. Therefore, in that Blair's trial (September 30, 1980) occurred prior to *Baker*, as did *Coleman* (August 5, 1981), the reasoning of *Goddard* applies. However, both *Goddard* and *Coleman* make clear that the mere fact that Blair's trial occurred prior to the *Baker* decision does not warrant a jury instruction of first degree murder—the evidence from the case must support a separate charge for felony murder. The evidence in this case did not. It follows, therefore, that Blair's contention that *Goddard* and *Blair* cannot be reconciled, thereby constituting a violation of his rights under the equal protection clause of the 14th Amendment is unsupportable.

Finally, Blair argues that the law in effect on the date that the Allen murder was committed (August 19, 1979), rather than the law in effect at the date of the trial (September 30, 1980), applies. Blair submits that to apply the September 28, 1979 amendment to § 565.006.1 of the homicide statute would constitute an ex post facto violation of the United States Constitution. In response, the State argues that the omission by the court in properly instructing the jury was a procedural rather than a substantive violation, and therefore, the ex post facto prohibition does not apply.

Blair argues that to apply the law as amended on September 28, 1979, would

be contrary to the holding in *Baker* and the subsequent affirmation by the court in *Goddard* to only apply the *Baker* decision prospectively. It is true that the court in *Baker* found that first degree murder was not a lesser included offense of capital murder. However, they based their decision on § 556.046 (R.S.Mo. 9789), enacted *January 1, 1979*, which states that a defendant can have an instruction of a lesser offense if it is specifically denominated by statute, or it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. In Missouri, a first degree murder conviction requires proof of the commission of a felony and capital murder does not. Clearly, first degree murder is not a lesser and included offense of capital murder. Further, a defendant is entitled to an instruction on a lesser and included offense if the evidence would permit a jury to rationally find him guilty of the lesser offense and acquit him of the greater. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). However, at the time that the Allen murder was committed (August 19, 1979), Missouri at that time had a statute (§ 565.006.1, R.S.Mo. 1978) in effect which specifically denominated that the jury in a capital murder case shall be instructed to consider whether the defendant is guilty or not guilty of capital murder, murder in the first degree, murder in the second degree or manslaughter. *See State v. Daugherty*, 631 S.W.2d 637 (Mo. 1982). Assuming arguendo that this was the applicable statute, the Court must next consider if the failure to apply this statute constitutes, as Blair contends, an ex post facto violation.[3]

Blair argues that a first degree murder instruction supplies a capital defendant with the availability of a "defense," namely, life v. death. If such a "defense" was available at the time the murder was committed, yet made unavailable at the time of trial due to the enactment of the amended statute, the omission of the first degree murder instruction, therefore, allegedly violates the ex post facto clause.

The State argues that the alteration in the instructions to the jury was a procedural rather than a substantive charge and, therefore, did not constitute an ex post facto violation. *See Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). The U.S. Supreme Court says that what is necessary for relief under the ex post facto clause is "not an individual's right to less punishment, but the lack of fair notice of governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). In the present case, the defendant clearly had fair notice as to the possible degrees of the offense under which he could be found guilty or not guilty. A conviction of capital murder was possible for Blair both prior to and subsequent to the September 28th amendment. Moreover, under *Beck, supra,* the jury in Blair's case was afforded the opportunity of finding the defendant guilty of some other offense in that they were not restricted to a conviction of capital murder or acquittal. By providing the jury with instructions for second degree murder and manslaughter, Blair was entitled to and given an alternative to the imposition of the death sentence as a procedural safeguard.

In conclusion, none of Blair's arguments support the contention that his constitutional rights were violated by the trial court's failure to instruct the jury on first degree murder.

### 5. Overreaching Plea for Death

Blair's final argument is that the trial court permitted the State to make several

---

**3.** An ex post facto violation is one in which a law, enacted by the state or United States legislature, has a retrospective effect, or has an impact on past transaction. An example would be a statute that imposes a criminal penalty for a past conduct that was lawful when performed; or, a law that imposes a harsher or potentially harsher penalty than existed at the time of the commission of the offense. J. Nowak, R. Rotunda & J. Nelson Young, *Constitutional Law,* at 477 (2d ed.1983).

prejudicial errors during the punishment phase of Blair's trial which, when combined, warrant the granting of this writ. The State contends Blair failed to exhaust his remedies in three of the ten or so issues raised under this point. If they were not raised on direct appeal, nor in his Rule 27.26 proceeding, there is a procedural default. While, as explained before, Blair is required to show "cause" for and "actual prejudice" resulting from his default, it will not prejudice the State to assume this requirement has been met.

■ Blair first contends that according to § 565.012 (R.S.Mo.1984), the jury in a capital murder case must find beyond a reasonable doubt at least one of the enumerated statutory aggravating circumstances before a sentence of death can ever be imposed. The trial court instructed the jury that it could find any one or more of five (5) aggravating circumstances. Blair argues that the assistant prosecuting attorney improperly argued several aggravating circumstances not instructed upon or contained within § 565.012 (R.S.Mo.1984), thus resulting in the increased risk of an arbitrary and capricious imposition of the death penalty.

The purpose of requiring the jury to find one or more aggravating circumstances is to identify those members of the class of persons convicted of murder who are eligible for the death penalty. The standards involving aggravating and mitigating factors provide guidance to the jury to reduce the likelihood that it will impose a sentence that may be arbitrary and capricious in violation of the Eighth and Fourteenth Amendments of the United States Constitution. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As the State notes, the Court in the recent case of *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), found that the Constitution does not require the jury to ignore other possible aggravating factors in their process of selecting. What is important for the jury to focus on during the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime as a whole. *See also, State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982). Further, the Court in *Zant* determined that even though the two cited aggravating factors were not valid as "statutory aggravating circumstances," because the jury found *other* valid statutory circumstances, such was legally sufficient to support the imposition of the death penalty.

■ In addition, Blair argues that the trial court failed to instruct the jury that he was presumed innocent of the alleged aggravating circumstances. However, § 565.012.4 (R.S.Mo.1984), specifically states that if the jury's verdict is a recommendation of death, it shall designate the aggravating circumstance or circumstances which it found *beyond a reasonable doubt.* No presumption of innocence is required for the jury's determination. *See Gregg, supra.*

■ Blair further contends that the trial court failed to instruct the jury that they must find beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances. However, as the State points out, the Supreme Court of Missouri has explicitly stated that the Constitution does not require that the jury find beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances. *State v. Bolder*, 635 S.W.2d 673 (Mo. banc 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). The jury is not required to find any mitigating circumstances to recommend mercy by the court, but it must find a statutory aggravating circumstance before recommending the imposition of a sentence of death. Once this factual threshold is reached, it is up to the jury to consider all the evidence and the aggravating and mitigating circumstances relevant to the crime and the defendant, and to use its discretion in making its recommendation for sentence. *State v. Smith*, 649 S.W.2d 417 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

Blair further argues that the trial court improperly instructed the jury on a non-

statutory aggravating circumstance involving his prior conviction and the use of an instruction on the aggravating circumstance of "torture." The State notes, however, that the Supreme Court of Missouri reviewed the facts surrounding Kathy Jo Allen's death and determined that the evidence supported a finding by the jury that Blair's acts were outrageously and wantonly vile, horrible or inhuman and that the conduct resulted from his depravity of mind. *State v. Blair*, 638 S.W.2d 739, 759; *see Smith, supra* at 434.

In addition, Blair claims that the use of the terms "depravity of mind" and "outrageously or wantonly vile and inhuman" within the jury instructions was so broad and vague that it rendered the instruction meaningless. However, the court in *Gregg* determined that this was a proper aggravating circumstance for the jury to consider in order to authorize the imposition of the death penalty. Further, as the State points out, this was only one (1) of four (4) aggravating circumstances found which were supported by the evidence. Even if this one instruction was determined to be invalid, the sentence of death would stand on the basis of the remaining three (3) factors. *See Zant, supra.*

Blair's contention that the jury was improperly instructed on a non-statutory aggravating circumstance is in error. MAI–CR2d 15.42, note on use 3, does not limit aggravating circumstances to those specifically directed to death penalty issues. It does allow the judge and jury to hear additional evidence in determining the punishment to be imposed, including "the record of any prior criminal convictions," according to § 565.006.2 (RSMo.1984). *See, State v. Bannister,* 680 S.W.2d 141 (Mo. banc 1984).

Blair next claims that the instructions to the jury which stated that he killed for money and he killed as an employee of Larry Jackson are the same, and that it was improper for the jury to consider them as separate aggravating circumstances. The State asserts that the fact that two (2) of the four (4) aggravating circumstances found by the jury describe the same thing is irrelevant. Only one (1) aggravating circumstance need be found by the jury to authorize the imposition of the death penalty. Whether the jury finds one (1), four (4), or fourteen (14) aggravating circumstances does not change their recommendation for punishment. Had only one of these two contested instructions been given to the jury, the recommendation would, nevertheless, have remained the same. Further, Blair's assertion that the third of the four (4) factors found which stated that the murder of Kathy Jo Allen was for the purpose of interfering with the lawful custody of Larry Jackson was erroneous would, according to the State, similarly fail to invalidate the recommendation for the penalty of death based on the remaining factors found by the jury to be supported by the evidence.

Blair also asserts that the jury was improperly allowed to consider evidence of a previous unrelated murder charge of which he was never convicted. As the State notes, this charge was referred to within a written confession by Blair in which he recounted his first meeting with Jackson during a stay at the Jackson County Jail. Evidence of this confession was admitted by the court as relevant to petitioner's intent and motive in committing the present murder. (Respondent's Ex. A, Vol. VI, p. 1814–16). Further, the Missouri Supreme Court upheld the trial court's evidentiary ruling by finding that said confession assisted in the establishment of motive. *State v. Blair,* 638 S.W.2d 739, 757 (Mo. banc 1982), *cert. denied* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983).

Finally, Blair claims that the statement made by the State to the effect that the jury was encouraged to impose a sentence of death because it was financially efficient to do was a constitutional error. He contends that such argument was prejudicial to the jury. Blair bases his claim on a recent poll in which the alleged cheaper cost was found to be one of the top four (4) reasons for supporting the death penalty. Although the Missouri Supreme Court in

its review found that the sentence was not imposed "under influence of passion, prejudice, or any other arbitrary factor," under § 565.014.3(1) (R.S.Mo.1978), Blair contends that such statement would have significantly weighed against him during the jury's consideration of death.

As a final appeal, Blair asserts that the review of capital verdicts as opposed to non-capital verdicts warrants greater scrutiny by this Court. Therefore, Blair contends that the combined aforementioned errors support his request for a change in sentence from death to life imprisonment without possibility of probation or parole for 50 years.

The Court has scrutinized this collection of alleged errors and finds that they do not amount to a violation of Blair's constitutional rights, either viewed individually or in combination. Accordingly, it is hereby

ORDERED that the petitioner's motion for habeas corpus relief is denied.