STATE of Missouri Plaintiff–Respondent,

v.

Gary ROBERTS, Defendant–Appellant.

No. 14833.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 9, 1987.

Nancy McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant Gary Roberts guilty of murder in the first degree, § 565.020,[1] and he was sentenced, as a persistent offender, § 558.016.2, to life imprisonment without eligibility for probation or parole. Defendant appeals.

Defendant's first point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise, "because there was no evidence of the essential element of deliberation in that, while the evidence indicated that defendant was present during the commission of the homicide, there was no showing that he participated in, or deliberated for any length of time upon, the matter of taking Donald Tracy's life or that defendant acted in a cool state of mind."

In assessing the sufficiency of the evidence to support the verdict, this court views the evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the verdict and ignores evidence and inferences contrary to the verdict. *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc 1987).

"A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1. " 'Deliberation' means cool reflection for any length of time no matter how brief." § 565.002(3).

The murder of Donald Tracy took place during the early morning hours of September 7, 1985, in Jasper County. Defendant, using a .44 caliber handgun (a "44/40 Dakota") shot Tracy in the face while the two men were standing a few feet apart. Also present when that shot was fired were Mike Hensley, David Tygart, and the latter's 15-year-old son Troy Tygart. This shooting took place at an area, apparently outdoors, called "Daylight," between Carterville and Webb City. Tracy fell to the ground seriously wounded. Defendant suggested that the victim be dragged "into the bushes." Hensley took Tracy's pulse and ascertained he was still alive. Tracy was then dumped into the trunk of a car.

The three men and the boy got into the car and drove, by a circuitous route, to Spring River bridge, also in Jasper County. The statement of facts portion of defendant's brief describes the events at the bridge in the following language:

"Once there, Hensley and Tygart lifted Tracy out of the trunk and laid him at the edge of the bridge.... According to Hensley, Tracy still had a pulse so [defendant] pointed his gun at him saying, 'Well, I'll just finish this right now.' Tygart stopped him, pulled his .357 Magnum, and shot Tracy in the head. The force of the bullet propelled Tracy's body off the bridge and into the water below."

Hensley, a state's witness, testified that "an hour and a half" elapsed between the

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

time of the first shot at Daylight and the time of the second shot at the bridge.

The state offered medical testimony to the effect that the second shot, the shot at the bridge, inflicted a wound in the back of the head which passed through the entire right side of the brain. The pathologist testified that the wound caused by the first shot, inflicted at Daylight, would "most likely not have been immediately fatal." The wound inflicted by the second shot, he said, "was a fatal wound regardless of after care." The pathologist also testified that Tracy "was still alive when he hit the water," and that Tracy drowned. The body of Tracy was recovered from the river later in the day, after Hensley had reported the occurrences to the authorities.

The state also offered testimony of events leading up to the shooting at Daylight, which occurred some time after 3:00 a.m. In the afternoon of the preceding day, September 6, Hensley had a conversation with defendant in which Hensley said, "Gary, what is this about you bombing this guy's car, putting a fire bomb in it and burning his car?" Defendant said, "Who told you that," and Hensley said, "Well, Don Tracy told me you guys went after a guy named Tom and burned up his car." Defendant said, "Man, I want to talk to that guy. Ain't nobody going to run their mouth on me. Go around telling people I burned up a car."

Sharon Hensley, wife of Mike Hensley, testified that around midnight, approximately three hours prior to the shooting at Daylight, Tygart and defendant waited for Tracy to arrive at the Hensley house where Tracy had been "staying." Tracy arrived at approximately 1:00 a.m. Tygart and defendant, who had been hiding outside, had guns in their hands. When Tracy went into the house Tygart "dropped to his knees and kind of army crawled up to the door." Defendant ran to the back of the house. Mrs. Hensley waited outside a few minutes and then went inside. Tygart "had a gun on Tracy, pointed at him." "[Defendant] asked Tracy why he brought his name into anything. Tracy did not say too awful much of anything. When de-

fendant was asking him that, defendant had a gun in his hand. [Defendant] asked questions about the car bomb and asked Tracy why his name was even brought up."

Mike Hensley, who had been asleep in a bedroom during the foregoing events, was awakened by defendant. Defendant said, "Mike, get up, we have got Don Tracy here. Let's get this shit straightened out right now." According to Hensley defendant said to Tracy, "Yeah, you s.o.b., you are running your mouth telling people I am blowing up cars and stuff.... I'll stop you from that." Defendant "started waving that gun around as he talked." Defendant said, "I ought to blow your goddamn head off right here" and he pointed the gun at Tracy. "[Defendant] walked right toward him and put the gun barrel right here first at Don's head."

Later defendant said to Tracy, "Get up, buddy, we are going to take a little ride. [Defendant] proceeds around Don Tracy and handcuffed him." Hensley asked defendant why he handcuffed him. Defendant said, "Well the little s.o.b. got away from me last night. He ain't going to get away from me until I get a chance to kick his ass." According to Hensley, Tracy said, "Well, Gary, if you are going to kick my ass, kick my ass right here and get it over with, man, I'm tired of this. Go ahead. Get it over with." Defendant said, "No, I ain't going to kick your ass here. I don't want to give Mike no trouble. We'll go out here to Daylight."

En route to Daylight, with Hensley driving, the handcuffed victim was seated in the back seat between Tygart and defendant, both of whom had guns. Before firing the first shot, defendant removed the handcuffs, which were behind Tracy's back. "[Defendant] pulled a gun at that point. [Defendant] reached behind him and pulled a gun from the back of his trousers, using his right hand." Defendant then stepped around in front of Tracy, stepped back about three feet and fired the shot. While still at Daylight, defendant opposed a suggestion made by Hensley that Tracy be taken to a hospital At the bridge, before the second shot was fired, defendant sug-

gested that Tracy be thrown into the river so that he would drown.

The foregoing evidence entitled the jury to find that defendant fired the first shot and that, an hour and a half later, would have fired the second shot except for the fact that his accomplice, Tygart, stopped him from doing so in order that Tygart himself could fire the second shot.

■ Defendant argues, "There is no basis for a finding of deliberation. [Defendant] apparently had no intention other than to have a fist fight with Tracy when the group left for Daylight." This argument completely overlooks the firing of the second shot, one and a half hours after the events at Daylight. Defendant makes no claim, and obviously could not do so seriously, that he and Tygart were not acting together when Tygart fired the second shot while the victim was still alive. The evidence was sufficient to support a finding of deliberation prior to the firing of the second shot. *State v. Mallett*, supra, 732 S.W.2d at 533[2]; *State v. Roberts*, 709 S.W.2d 857, 862–63[3–4] (Mo. banc 1986); *State v. Hatfield,* 465 S.W.2d 468, 471 (Mo. 1971). It is not necessary to determine whether the first shot was preceded by defendant's deliberation. Defendant's first point has no merit.

Defendant's second point is that the trial court erred, for reasons to be stated, in giving Instruction 5, the state's verdict-director on murder in the first degree. Instruction 5, based on MAI–CR.2d 13.02 as modified by MAI–CR.2d 2.12, reads:

"Instruction No. 5

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with them with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 7, 1985, in the County of Jasper, State of Missouri, the defendant or Mike Hens-ley or David Tygart caused the death of Don Tracy by shooting and drowning him, and

Second, that the defendant or Mike Hensley or David Tygart were aware that their conduct was practically certain to cause the death of Don Tracy, and

Third, that the defendant or Mike Hensley or David Tygart did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you are instructed that the offense of Murder in the First Degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the death of Don Tracy, the defendant acted together with or aided Mike Hensley or David Tygart in causing the death of Don Tracy and did so after deliberation, then you will find the defendant guilty of Murder in the First Degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense."

Defendant makes the following criticisms of Instruction 5:

(a) Instruction 5 "permitted the jury to make inconsistent findings by submitting the requisite mental state in the disjunctive in paragraph 3 but ascribing the requisite mental state solely to appellant in paragraph 4, and as a result the instruction was confusing and misleading";

(b) Instruction 5 "did not comply with MAI–CR.2d 2.12 Notes on Use 7."

The discussion of defendant's first point sets forth much of the state's evidence. That evidence and the following additional evidence are germane to defendant's second point. During the direct examination of Troy Tygart, a state's witness, Troy testified that he heard the sound of the second shot at the bridge but he "did not actually see who fired at that point." On cross-examination, Troy said that he told two investigating officers that he saw de-

fendant fire the second shot. The latter testimony was properly received as substantive evidence that defendant fired the second shot. § 491.074. A defense witness, testifying with respect to the result of a "gunshot residue" test conducted on Hensley's hands on the day of the murder, said that his findings with respect to Hensley "could be consistent with handling a recently fired weapon."

There was evidence, depending upon which version or versions of Hensley's and Troy Tygart's respective testimonies the jury saw fit to believe, that (1) defendant fired the first shot and the second shot, (2) defendant fired the first shot and David Tygart fired the second shot, or (3) defendant fired the first shot and Mike Hensley fired the second shot. Instruction 5 was drafted in light of those possibilities.

■ There is no merit in criticism (a). There was evidence to support a finding that the death of Tracy was caused by the second shot which, itself, caused Tracy to fall to the river and drown. The jury could find that the second shot was fired by defendant or by Hensley or by David Tygart. Indeed, defendant makes no claim, other than the one stated under his rejected first point, that paragraphs First, Second and Third of Instruction 5 lacked evidentiary support. The findings required by those three paragraphs of Instruction 5 did require a finding that the offense of murder in the first degree had occurred.

Paragraph Fourth of Instruction 5 required findings with respect to the conduct and mental state of defendant himself. Since, on the basis of the cross-examination of Troy Tygart, the jury could find that defendant fired the second shot, those portions of paragraphs First, Second and Third mentioning defendant were included by the drafter. Paragraph Fourth properly deals with the conduct, purpose, and deliberation of defendant alone. The instruction is not confusing or misleading, nor does it permit the jury to make inconsistent findings.

Criticism (b) is also without merit. Note 7 to the Notes on Use (1983 revision) to MAI–CR.2d 2.12 reads, in pertinent part:

"The ordinary verdict director for capital murder (MAI–CR2d 15.02) provides for this in the fourth paragraph which states:

'Fourth, that the defendant considered taking the life of [name of victim] and reflected upon this matter coolly and fully before doing so....'

If in using MAI–CR2d 2.12 this element is ascribed to the defendant alone or to the defendant *and* the other person or persons, the requirement of finding that the defendant 'deliberated' is satisfied. If, however, this element is not ascribed to the defendant but is ascribed solely to another person (as would be the case where the defendant did not perform any of the conduct which caused the death and the defendant's liability is based solely on his aiding the person who caused the death) then it is suggested that the ascription of that mental state to the defendant should be accomplished by ... [A modification is suggested] ... The failure to make this or a similar modification is not necessarily reversible error. *State v. White*, 622 S.W.2d 939 (Mo. banc 1981). However, such a modification makes clear that the jury must find that the defendant did deliberate and also allows for a converse instruction on that point." (Emphasis in original.)

Defendant's criticism (b) relies on the language, "but is ascribed solely to another person," contained in Note 7. Based on that language defendant's argument is, as this court understands it, that paragraph Third of Instruction 5 was improper in including the words "the defendant or" because, in so doing, it did not ascribe the conduct "solely to another person."

■ Defendant's argument misinterprets that sentence of note 7. The sentence does deal with a situation where the element—the conduct which caused the death—is ascribed solely to another person. Such would be the situation if the evidence had shown that defendant had not fired either of the shots and that his liability was based solely on his aiding the person or persons who caused the death. Where, as here, the evidence permitted the jury to find that defendant himself may or may not have been the person who actually fired the shot or shots, paragraphs First,

Second, and Third of Instruction 5 properly included reference to the defendant.

Note 7, quoted in part above, was approved on April 30, 1982, and became effective January 1, 1983. Note 7 refers to MAI–CR.2d 15.02. MAI–CR.2d 15.02 was patterned on a statute which defined capital murder and which was repealed by L.1983, S.B. No. 276, p. 922, § 1. Instruction 5 was not based on MAI–CR.2d 15.02, but was based in part on MAI–CR.2d 13.02 which in turn is based on § 565.020, defining murder in the first degree. The latter statute is the one involved here.

As the excellent brief of the state points out, Note 6(c) of the Notes on Use to MAI–CR.2d 2.12, reads:

"Where the evidence is not clear or conflicts as to which person (in a group including the defendant) engaged in the conduct constituting the offense, (as where the defendant is charged with burglary and the evidence shows the defendant was one of two persons, one of whom unlawfully entered the building and stole while the other remained outside as a lookout) ascribe the elements of the offense to the defendant *or* the other person or persons.

Use the alternative 'acted together with or aided' in the paragraph following 'then you are instructed that the offense of [name of offense] has occurred....'" (Emphasis in original.)

Paragraphs First, Second and Third of Instruction 5 comply with Note 6(c). Paragraph Fourth of Instruction 5 properly ascribes its contents to the defendant. It must be noted that the word "deliberated" contained in paragraph Fourth, had previously been properly defined in paragraph Third.

Instruction 5 complied with MAI–CR.2d 2.12, including Notes on Use 7 and 6.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.