**Gary Dowell ROBERTS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 15956.**

Missouri Court of Appeals, Southern District, Division Two.

June 13, 1989.

Elizabeth Clarke, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

A jury found movant, Gary Dowell Roberts, guilty of the first degree murder of Don Tracy on September 7, 1985. In accordance with the verdict of the jury, movant was sentenced to imprisonment for life without eligibility for probation or parole. His conviction was affirmed on appeal. *State v. Roberts*, 738 S.W.2d 606 (Mo.App. 1987). He now appeals from the denial of his motion under Rule 27.26 attacking that conviction and sentence.[1]

A statement of the facts of the homicide is found in *State v. Roberts*, supra. Also see *Tygart v. State*, 752 S.W.2d 362 (Mo. App.1988). The following outline of facts is sufficient for consideration of this appeal.

Movant, David Tygart, Mike Hensley and Don Tracy at one time had been friends. However, for a variety of reasons, animosity had developed between Tracy and movant and David Tygart. At the time of the homicide, Tracy was staying in the home of Hensley. Tracy arrived at that home about 1:00 a.m. David Tygart and movant were armed and were hiding outside. Hensley was in bed. Hensley, David Tygart and movant had been drinking heavily. After Tracy entered the house, David Tygart and

---

1. Movant's sentence was pronounced before and his motion under Rule 27.26 was pending on January 1, 1988. Post-conviction relief is governed by the provisions of former Rule 27.26.

movant went inside. An argument ensued, principally concerning whether or not Tracy had told others that movant had been involved in a car bombing. About 3:00 a.m., Hensley went to David Tygart's house for more beer. He returned with Tygart's car and Troy Tygart. Troy Tygart was David Tygart's fifteen-year-old son. Movant had handcuffed Tracy. He made various threats toward Tracy. A decision was made to take Tracy from the house. Hensley drove the group to a rural area called "Daylight". Hensley testified he thought movant and Tracy were going to have a fist-fight. Troy Tygart testified to the same effect.

At Daylight, the group got out of the car. Movant removed Tracy's handcuffs. Tracy apparently prepared to fist-fight. Movant shot Tracy. The wound did not kill him. Hensley wanted to take Tracy to the hospital. Movant said that he couldn't let Hensley do that because if Tracy lived, he would cause movant to be prosecuted. Movant said, "... I'll blow his goddamn head off right here." David Tygart said, "No, no more shots. We'll take him and dump his body in Northfork."

Tracy was placed in the trunk of the car. In a circuitous route, Hensley drove the group to a bridge over Spring River. Hensley testified that in doing so he drove at an excessive speed in anticipation that he would be stopped by an officer. At the bridge, Tracy was taken from the trunk and placed on the floor of the bridge. Movant then started to shoot Tracy again. David Tygart stopped him and shot Tracy in the head with a .357 Magnum. The force of the bullet propelled Tracy into the river. A pathologist testified Tracy died from drowning although the second shot would have undoubtedly caused death even if medical aid had been rendered. The first shot was not necessarily fatal.

The group rode around some more and got additional beer. Eventually, the party separated. After talking with his father, Hensley reported the homicide to the sheriff. At movant's underlying criminal trial, the state established the basic facts primarily through the testimony of Hensley and Troy Tygart.

The movant's first point is based upon the appearance of Hensley as a witness for the state. The point has the following background.

On February 25, 1986, the prosecuting attorney, William J. Fleischaker, by letter, confirmed an agreement with movant's attorney, Larry Maples. The agreement provided that Hensley would testify in the cases pending against David Tygart and Gary Roberts. In exchange, the state agreed to reduce the charge against Hensley to murder in the second degree and to recommend a sentence of imprisonment "not to exceed twenty-five years should Mr. Hensley determine to either go to trial or to plead guilty." This agreement was disclosed to movant.

On March 31, 1986, David Tygart entered a plea of guilty to a charge of first degree murder of Don Tracy. The plea was entered pursuant to a plea bargain that the state would waive the death penalty and David Tygart would be sentenced to imprisonment for life without eligibility for probation or parole. He was so sentenced on April 14, 1986. The movant's trial was held on May 13 through 16, 1986. On June 9, 1986, pursuant to a plea bargain, the state further reduced the charge against Hensley to involuntary manslaughter. Pursuant to the plea bargain, Hensley was sentenced to imprisonment for seven years. Although the prosecuting attorney opposed the same, the court suspended the execution of his sentence and after serving sixty days shock time in the county jail, he was placed on probation for five years.

■ The movant's first point is that the motion court erred because unknown to the movant the prosecuting attorney led counsel for Hensley to believe that the charge against Hensley would be reduced after his testimony, but the agreement concerning second degree murder must stand through movant's trial because a "better deal" might affect Hensley's credibility.

The movant's argument to support the point seems to be based upon the factual premise the agreement was that in ex-

change for Hensley's testimony, Hensley would plead guilty to second degree murder and be sentenced to imprisonment for twenty-five years. He cites only bits of testimony such as the following. Maples' testimony that the prosecuting attorney told Maples that "He couldn't give or couldn't offer manslaughter prior to the trial ... because of the credibility of the witness." Maples' testimony that he took the prosecutor's comments to express a possibility that the plea bargain deal might get better after movant's trial. Movant also emphasizes Fleischaker's testimony that it is possible he told Maples that Fleischaker could not reduce the charge to manslaughter because of the credibility problem with Hensley. Movant argues that even though there is no evidence to support such a finding, it must be found that Maples told Hensley that Hensley's plea bargain would get better. He concludes "[t]he decision to adjust the charges against Hensley was made before the Roberts trial and that the second degree murder bargain on the record was both temporary and cosmetic."

Movant's legal premise for his first point is that a defendant is denied the constitutional right of due process if the state does not disclose a plea bargain made in exchange for testimony for the state. He cites cases such as *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Hayes v. State,* 711 S.W.2d 876 (Mo. banc 1986). It is conceded that this premise is well-established. See *State v. Patterson,* 618 S.W.2d 664 (Mo. banc 1981); *State v. Collett,* 526 S.W.2d 920 (Mo.App. 1975), and *State v. Brooks,* 513 S.W.2d 168 (Mo.App.1973). The doctrine has been summarized as follows.

> Suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Brady v. Maryland,* 373 U.S. 83, 84, 83 S.Ct. 1194 [1195], 10 L.Ed.2d 215 (1963); *State v. McClain,* 498 S.W.2d 798 (Mo. banc 1973). 'When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evi-

dence affecting credibility falls within this general rule.' *State v. McClain* supra at 800 quoting from *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *State v. Brooks,* supra, at 174.

For the purpose of this opinion, it is not necessary to consider if a request for disclosure under Rule 25.03(A)(9), or the absence of such a request, affects the extent of the duty to make such a disclosure. See *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *State v. Patterson,* supra, and *State v. Charity,* 637 S.W.2d 319 (Mo.App.1982). Whether or not such nondisclosure requires a new trial, has been expressed in the following language.

We find the Strickland formulation of the Agurs test for materiality sufficiently flexible to cover the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley,* supra, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

It is trite to restate any of the rules governing appellate review of the denial of a motion under Rule 27.26. Nevertheless, it is appropriate to recognize such of those rules that establish that movant's first point has no validity. Those rules are the following. The motion court is to reach its determination by a consideration of all the evidence. *Chamberlain v. State,* 687 S.W.2d 631 (Mo.App.1985). "Movant has the burden of proving his asserted grounds for relief by a preponderance of the evidence. *Careaga v. State,* 613 S.W.2d 863, 867 (Mo.App.1981)." *Armour v. State,* 741 S.W.2d 683, 688 (Mo.App.1987). "Even if not directly contradicted, the trial judge can disbelieve testimony. *Mansfield v. State,* 625 S.W.2d 214, 215 (Mo.App.1981). Assessing the credibility of the witnesses

was for the trial court. *Trimble v. State,* 588 S.W.2d 168, 170 (Mo.App.1979)." *James v. State,* 694 S.W.2d 890–891 (Mo. App.1985). "Appellate review shall be limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Rule 27.26(j) (Now repealed). Also see Rule 24.035(j) and Rule 29.15(j).

In his argument, the movant ignores these rules and the controlling facts. Those facts include the following. The initial agreement did not require Hensley to plead guilty. The agreement was that the state would recommend no greater sentence than imprisonment for twenty-five years, whether or not Hensley pled guilty to second degree murder. At movant's trial, Hensley acknowledged that agreement and announced his decision to stand trial. It may be assumed that Hensley could have been impeached to a greater degree by showing his well-founded anticipation of a reduced charge of involuntary manslaughter. The burden was upon the movant to establish Hensley had knowledge of how the state engendered such an anticipation. Cf. *State v. Holt,* 659 S.W.2d 233 (Mo.App. 1983); *State v. Hamilton,* 622 S.W.2d 264 (Mo.App.1981), and *State v. Ofield,* 635 S.W.2d 73 (Mo.App.1982). *Blair v. Armontrout,* 643 F.Supp. 785 (W.D.Mo.1986). Movant did not meet that burden.

More fundamental, movant also ignores the evidence that supports the conclusion that Fleischaker did not determine to enter into a plea bargain to reduce the charge to manslaughter until after movant's trial and gave Maples no reason to think he would do so. That evidence includes the following. Prosecuting attorney Fleischaker testified that after the initial agreement, Hensley's counsel kept trying to get a "better deal" for Hensley. Maples could not remember whether or not the manslaughter charge resulted from him begging for such a reduction. It was in this context, Fleischaker said that he might have told Hensley's counsel he could not consider reducing the charge to manslaughter before Roberts' trial because of a credibility problem. Prosecuting attorney Fleischaker unequivocally testified that prior to Rob-

erts' trial there was no agreement with Hensley other than as stated in the letter of February 25, 1986. After Roberts' trial, Fleischaker thought Hensley made a good witness. He believed Hensley might persuade a jury that he had nothing to do with the shooting and be acquitted of second degree murder. Movant does not acknowledge the transcript of Hensley's plea of guilty to involuntary manslaughter. That transcript includes Hensley's statement to the court. That transcript is dramatic evidence that Fleischaker's belief was reasonable. Fleischaker also testified he thought Hensley was entitled to some consideration because he had cooperated with law enforcement authorities. The Hensley plea transcript also shows why Fleischaker reached that conclusion. It explains why the court was concerned for Hensley's safety if Hensley was imprisoned. It is reasonable to conclude this is why the court placed Hensley on probation even though Fleischaker opposed that action. Fleischaker said that because of the factors mentioned, after Hensley stated that he would not plead guilty to second degree murder, Fleischaker agreed to the plea bargain reducing the charge to involuntary manslaughter.

The motion court's findings in respect to movant's first point included the following.

To sum up, it is the Court's finding that the conversations between Mr. Fleischaker and Mr. Maples that occurred between the first plea agreement and movant's trial consisted merely of normal negotiations between the attorneys. And while these conversations did give Mr. Maples reason to hope for a better plea agreement after the trial, he was never given any assurance that a better agreement would be made, and in fact the second plea agreement was decided upon only after Mr. Fleischaker was convinced by Hensley's testimony that Hensley's degree of involvement was less than he previously believed and that in all justice he should not be charged with more than involuntary manslaughter. But most importantly, the Court finds that when Mike Hensley

testified at movant's trial he did not know of the conversations between Fleischaker and Maples, and that he believed that in return for his testimony all the State would do was reduce the charge to murder in the second degree with a twenty-five year maximum sentence.

The Court finds that the true plea agreement with Hensley was disclosed to movant and to the jury, and that Hensley's credibility as a witness could not have been affected by the agreement made subsequent to the trial.

The disposition of the movant's first point is not controlled by his unsupported characterizations and conclusions. It is controlled by all of the evidence and the findings of the motion court. It is sufficient to observe those findings are supported by the evidence. The movant's first point has no merit.

■ The movant's second point is that the motion court erred because movant was denied the effective assistance of counsel in that movant's trial counsel, David Robards, failed to present the testimony of David Tygart who had earlier said he fired both shots into the victim. To support this point, movant cites the following portions of the testimony of Robards at the motion hearing. That at one time David Tygart had told Robards he fired both shots. That he, Robards, had David Tygart at movant's trial, but did not call him as a witness because David Tygart had told conflicting stories. The movant then relies upon David Tygart's statement at the motion hearing that at the trial he was prepared to testify he fired both shots, but was not called as a witness. Therefore, movant concludes Robards rendered ineffective assistance of counsel.

The movant does not take into consideration the following evidence produced out of the hearing of the jury at the movant's underlying trial. A few days before that trial Robards took a tape-recorded statement from David Tygart in the penitentiary. It was in this statement David Tygart said he fired both shots. However, before movant's trial David Tygart wrote Robards

and recanted his statements. Robards admitted the receipt of the letter and said he gave it to Roberts. Robards had not as part of requested discovery disclosed this letter to the state. Neither Robards nor Roberts could produce the letter. The state objected to David Tygart testifying. In seeking permission to call David Tygart as a witness, the following transpired.

> MR. ROBARDS: The letter did not set forth in particular anything that Mr. Tygart is going to testify to or about, Your Honor. It simply said that some of the things that he had told me at the time that I met with him in Jefferson City were not correct and *that his son's testimony was correct* on those things. Isn't that right, David? (Emphasis added.)
>
> THE WITNESS: Yes.

Troy Tygart had testified that the movant fired the first shot. He said movant took the handcuffs off and "backed up about three foot [sic] and shot him." Even though Robards admitted not disclosing the missing letter, the trial court ruled that David Tygart could be called as a witness. Had David Tygart been called and testified that he fired both shots, he could have been impeached by not only the admitted contents of the missing letter, but by his statement out of the hearing of the jury at movant's trial that the testimony of Troy Tygart was correct. It is also significant that upon entering his plea of guilty on March 31, 1986, David Tygart stated that he only shot Tracy once. See *Tygart v. State*, supra, at 369.

Robards testified that the decision not to call David Tygart "was a decision that we made not to put him on. I was not sure what he would testify to."

The motion court found the following. "... David Tygart at one point claimed that he fired both shots but later changed his story, and the Court finds that after Mr. Robards talked to him, Mr. Robards was uncertain as to just what David Tygart would testify to and made a wise decision not to call him as a defense witness. The Court finds that this was good trial strategy and therefore rules this point against movant." A decision made as a part of

trial strategy is not a basis for relief under Rule 27.26. *Neal v. State,* 703 S.W.2d 570 (Mo.App.1986). This finding and conclusion of the motion court is supported by the evidence. Movant's second point is denied. The judgment is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.